No. 30,340.

LILLIE WILLIAMS, *Appellee*, v. THE KANSAS STATE HIGHWAY COMMISSION, *Appellant*.

(8 P. 2d 946.)

Opinion
filed March 5, 1932.

*James E. Smith, S. W. Jackson, Wint Smith* and *Ralph Hope,* all of Topeka, for the appellant.

*Floyd A. Sloan, W. Glenn Hamilton,* both of Topeka, and *Albert M. Cole,* of Holton, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: Lillie Williams brought this action against the state highway commission to recover damages from the state for the death of her husband, caused, as alleged, by defects in a highway over which he was traveling in an automobile on the night of July 19, 1930. The jury returned a verdict in favor of plaintiff for $2,500, which was approved by the court and judgment accordingly entered. The defendant appeals.

The accident occurred on U. S. Highway No. 75, a much-traveled road over which about 600 cars pass daily. It was surfaced with sand and gravel, and it appears there were two holes near the top of a hill just south of the city of Holton down which the automobile was being driven when the accident occurred. One of the two holes was two and one-half feet long, ten inches wide and five inches deep. The other near it was two feet long, ten inches wide and four inches deep. The automobile was being driven near the center of the road by one Pritchard with Williams and others in the car and was going down the hill at a speed of from thirty to thirty-five miles an hour, when one of the front wheels of the automobile dropped into a hole, which threw the driver to the left, and presently a wheel dropped into the other hole and threw him to the right, causing him to lose control of the car, and after it ran down the hill about 300 feet it turned over, with the result that Lester Williams was killed. The action is brought under the statute (R. S. 1931 Supp. 68-419) which authorizes a recovery from the state for any damages resulting from

a defect in a state highway if the person injured was without contributing negligence. The recovery is warranted if the director, engineer or any member of the highway commission or any foreman, patrolman or other employee in charge of the construction, maintenance or upkeep of such highway shall have had notice of such defects five days prior to the time when the damage was sustained. The action is authorized to be brought against the state highway commission and must be brought within two years after the injury.

Defendant contends, first, that the holes mentioned do not constitute defects in the highway within the meaning of the statute. The car was being driven over an improved highway which had been graded, surfaced with sand and gravel, and it constituted a part of the state highway system. It had been constructed and was being maintained by the state highway commission. Under the statute it became the duty of the commission to keep the highway in a reasonably safe condition for public travel. Of course, not every slight depression or inequality in the surface of the road would be regarded as a statutory defect, but a hole five inches deep cannot be regarded as a mere inequality or slight depression. When the wheel of an automobile drops into a hole of that depth when going at thirty or thirty-five miles an hour it necessarily will cause a severe jolt, and when this was instantly followed by a drop into another hole it would be likely to jar the driver and toss him from one side of the car to the other, and thus account for his losing control of the car. The holes, it appears, were only a few feet apart and respectively four and five inches deep. The drops coming close together necessarily increased the danger and made the plight of the driver of the car more difficult. We have had a number of cases involving the question of what is a defect under the law, one of which is *Collins v. State Highway Comm.*, 134 Kan. 278, 5 P. 2d 1106. There a shoulder had been built on the edge of the concrete slab, and there was a deep rut on the side of the shoulder. On some occasions it had become necessary for the driver of cars to drive upon the shoulder to avoid a collision where there was a congestion in the traffic. The plaintiff had occasion to use the shoulder and dropped into the rut, which resulted in an injury. It was held to be a defect in the highway which justified a recovery of damages. In the decision it was said:

"There is no legal foot-rule by which to measure conditions generally and determine with precision whether a condition constitutes a defect. Some con-

ditions may be so patently dangerous that a verdict denying defect would be promptly set aside. Other conditions may be so trifling that a verdict of defect would be promptly set aside." (p. 283.)

Another case dealing with the question is *Watson v. Parker Township,* 113 Kan. 130, 213 Pac. 1051. In that case there was a ditch covered with weeds on the side of the traveled part of the road, which was only thirteen and one-half feet wide, and plaintiff driving an automobile turned off the traveled part to avoid collision with an oncoming car and his car ran into the ditch, which he could not see because it was covered with weeds. The court did not undertake to determine as a matter of law that the ditch was a defect, but under the evidence it was held to be a question of fact for the jury to determine. Here the result of running into the holes appears to have jerked the car from the control of the driver, followed by the overturning of the car and the fatality mentioned.

A condition of a highway which renders it dangerous for the public traveling over it is certainly a defect. The evidence tends so strongly to show that the highway was in a dangerous condition that whether it amounted to a defect under the statute became at least a question for the determination of the jury. The defendant expresses fear that if the state is held liable for such defects the consequences will be disastrous. It is said that a large part of the improved roads of the state are constructed of sand and gravel and that such depressions and defects are so numerous, especially in dry weather and after heavy rains, as to make maintenance of them well-nigh impossible, and that these conditions should be considered by the court in determining the case. That is a question of policy proper for the consideration of the legislature and not for the courts, except so far as it may aid in the interpretation of the present statute. Our duty is to interpret the statute as it has been enacted.

Another contention is that legal notice of the defect was not given to any of the officers, agents or employees named in the statute. A notice of five days prior to the time when the damage was sustained is required and may be given to the director of highways, state highway engineers, any member of the state highway commission, any foreman, any patrolman or any employee in charge of the construction and maintenance or upkeep of the highway. A patrolman on this highway testified that he had charge of the section where the accident occurred and knew of the holes for close to a week. That he dragged the road every other day and had noticed the holes and

had given instruction to employees to repair the defects. No written notice was shown to have been given, but it was not necessary that the notice should be in writing nor that any particular formality attend the giving of notice. Actual knowledge of the defect is the equivalent of actual notice. (*McGuire v. Ellis County Comm'rs,* 133 Kan. 225, 299 Pac. 945.) Here the patrolman in charge of the maintenance of the road had full knowledge of the defects and had tried in a futile way to repair them by putting dry loose sand in them and the next day the sand would be gone. The notice given was sufficiently shown by the fact that the patrolman had knowledge of the defect more than five days before the accident. It appears that immediately after the accident a "slow sign" was placed near the defects and actual repair made.

There is a further contention that the existence of the holes was not the proximate cause of the injury. It is argued that the defects mentioned cannot be regarded as the proximate cause of the injury, but the injury was due to the negligence of the driver, who should have seen the defects by the aid of his headlights. The jury found that the headlights illuminated a distance of about forty feet. Defendants cite authorities to show that in driving an automobile on a dark night it is negligence as a matter of law to drive at such speed that it cannot be stopped within the distance that objects or obstructions in the highway can be seen ahead of the car. The rule is to be applied to instances where the object or obstruction is visible to one having proper headlights and using reasonable care in watching the highway for defects. However, where the objects or defects are of such a character that they are not visible to a driver using such care, a qualification of the rule must be made. The visibility of the object is necessarily one of the tests of the negligence of the driver. In *Abbott v. Wyandotte County,* 94 Kan. 553, 146 Pac. 998, an action to recover damages for the death of the driver of an automobile occasioned by a defect in a bridge, there was a contention that the driver should have driven at such a speed that he could have seen the defect and stopped his automobile before reaching it. The rule invoked was recognized by the court, but it was said:

"The deceased had no occasion to anticipate stopping. He was on the right-hand side of a broad highway and could see far enough to turn aside if confronted by *visible* objects." (p. 559.)

Another case where visibility of an obstruction or defect was made a controlling feature in the application of the rule is *Hayden v. Jack*

*Cooper Transport Co.,* 134 Kan. 172, 5 P. 2d. 837, and it was contended that the driver of the automobile should have seen and avoided an obstruction in a highway which was within the zone of the headlights. It was decided:

"The rule that one driving an automobile in the nighttime must so operate his car that he may stop it within the range of vision of his headlights, is applicable in cases where vehicles or other objects on the highway may be seen by the aid of proper lights, but where an obstruction was of such a character and so placed that a motorist driving his car properly equipped with lights and brakes, at a moderate speed, is unable to see an obstruction in time to prevent colliding with it, and is otherwise free from negligence, he cannot be held guilty of contributory negligence as a matter of law." (Syl. ¶ 1.)

Here there is evidence that the driver in descending the hill could not see the holes until he was practically upon them. A supervisor of the state highway commission testified that the holes, if not filled with sand, might not be visible in the night. The driver testified that he was watching the road ahead of him at the time and did not see the holes. After striking the holes the driver did not, as it appears, apply the brakes, but whether the application of the brakes in the descent of the hill would have been a wise movement on the part of the driver, if he could have done so, is open to question, and it appears that the jolt was sufficient to cause the driver to lose control of the car and it went into the ditch in going the short distance of 290 feet. The court advised the jury that before they could find for the plaintiff they must find that the condition of the highway where the injury occurred was the proximate cause of the death of Williams, and correctly explained to them the meaning of proximate cause. No objection was made to the instruction, and the jury has found specifically that the holes were the proximate cause of the injury. In view of the evidence we think the finding was justified.

There is some complaint of the instructions given and in one of them the court instructed that—

"You are instructed that before the plaintiff is entitled to recover a verdict against the defendant it will be necessary for you to find from a preponderance of the evidence:

"First. Whether a defect in fact existed in said highway at the place therein of the alleged injury.

"Second. Whether the injury and death of Lester Williams, the plaintiff's intestate, was caused by such defect.

"Third. Whether the director of highways, or state highway engineer, or any member of such state highway commission, or any foreman, patrolman, or other employee in charge of the construction and maintenance, or upkeep, of

such highway had actual knowledge or notice of such defects as much as five days before the injury."

It is said that this instruction is not of itself objectionable, but it is contended that in an earlier instruction the court in speaking of the issues said plaintiff must prove one or more of the acts of negligence charged in the petition, and further added it was not necessary that they should find the defendant had committed all the acts of negligence complained of, and that if any one of the acts was the proximate cause of the injury a recovery might be had. The statement occurs in the charges of a more general nature in the early part of the instructions. The rule mentioned is commonly applied in cases where several distinct grounds of negligence are charged, but it is not particularly applicable where a single ground of negligence is pleaded. It was not necessary in this case, where the defect in the highway was the single ground relied on. We think, however, that could not have misled the jury since the court in plain terms had instructed the jury as to the elements which must be proven before plaintiff could recover, and that plaintiff could not recover unless the defects in the highway were the proximate cause of the injury. These elements were proven to the satisfaction of the jury, and we think that no prejudice could have resulted to defendants by the superfluous comment.

Other parts of the instructions given are criticized and complaint is made of rulings refusing requested instructions, but in them we find nothing deemed to be material.

Finding no error in the record, the judgment is affirmed.

SLOAN, J., not sitting.

SMITH, J. (dissenting): I find myself unable to agree with the conclusions reached by a majority of the court in this case. I choose to place my dissent on the ground that the condition pointed out in the highway was not a defect. The statute under which the action was brought is as follows:

"Any person who shall without contributing negligence on his part sustain damage by reason of . . . any defect in a state highway . . . may recover such damages from the state of Kansas." (R. S. 1931 Supp. 68-419.)

The condition complained of was two depressions in the road. One of these depressions extended a little to the left of the center of the road. This one was two feet long by ten inches wide by four inches deep. The other extended a little to the right of the center

of the road and was two and one-half feet long by ten inches wide by five inches deep. They were a short distance apart. The road was of the type with which we are all familiar, known as a "sand and gravel road." No one would have argued that two such depressions as these were defects in the days when we were content to travel on dirt roads.

The problem that confronts the state in its business of building highways is the demand for more miles of all-weather road. The most desirable type of road is of cement or brick; the next is perhaps the macadam or blotter type, and last is the sand-and-gravel type. Now, depressions such as the ones we have spoken of in this case do not appear in the cement, brick, macadam or blotter type, but we frequently find them in the sand-and-gravel type. The answer would appear to be, then, that only the more substantial type should be built. That cannot be, however, because the public is demanding more and more mileage of all-weather road. The funds of the state available for road construction are limited— hence the less expensive type. Now what are the disadvantages of the sand-and-gravel road? There must be some else this type would be used to the exclusion of the more expensive. We do not have to look far. The worst disadvantage is one familiar to every person who travels on the highways of the state. Heavy traffic in dry weather will wear it out. Unlike the "one hoss shay" it does not wear off evenly. Where the soil has less viscosity or the coating of sand and gravel was put on thinner than in other spots it wears through and depressions appear. Once the depression is started, the elements unite to make it worse. Especially is this true of a summer such as the one during which this tragedy occurred. There was no evidence that these depressions were in the same condition on the night complained of as they were five days before that night. This may be safely said because no one could say such a thing unless he stood by the holes and watched them. Depressions such as these on a road such as the one in question are changing every minute of the night and day, due to the action of the road and the wear and tear of traffic. But are they defects? Not at all. They are conditions which one should expect to find in a road of that type. Such conditions are an inherent quality of a sand-and-gravel highway as much as for a cement highway to be slippery when it is wet. If the driver of the car in question was driving at a rate of speed

that caused him to lose control of his car when he struck these depressions he was going too fast, whether it was twenty-five or thirty-five miles per hour. One driving an automobile on a sand-and-gravel road is under a duty to so manage it that a condition such as that described herein will not cause him to lose control.

In my opinion the judgment of the trial court should be reversed, with directions to dismiss the action.

I am authorized to say that Mr. Justice Harvey concurs in this dissent.