No. 31,543

E. L. SNYDER, *Appellee*, v. THE KANSAS STATE HIGHWAY
COMMISSION, *Appellant*.

(30 P. 2d 102.)

Opinion filed March 10, 1934.

*Wint Smith,* attorney for State Highway Commission, *Edward F. Arn,* assistant attorney for State Highway Commission, and *Louis R. Gates,* of Kansas City, for the appellant.

*George H. West, P. W. Croker* and *Clarence A. Mott,* all of Kansas City, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This is an action to recover damages on account of the alleged defective condition of a state highway. Judgment was for plaintiff. Defendant appeals.

The highway at the point where the injury occurred was constructed of concrete. In his petition plaintiff alleged that his car struck "a depression or low place in said highway." He alleged further that "because of such depression or low place in said highway plaintiff and the car in which he was driving was hurled from said road and turned over several times . . . and as a direct result of such defect in said road" the plaintiff suffered injuries. The petition alleged further—

"That said injuries were caused wholly and solely by reason of the carelessness and negligence of the defendant, its agents, servants, representatives and employees, in the following particulars, to wit:

"In causing and permitting said low place or depression to be and remain in the condition that it was in at the time of the happening of the injuries. In failing and neglecting to keep said highway in a reasonably safe condition for public travel, and particularly this plaintiff; and in causing and permitting said highway to be and remain in a dangerous condition; and in failing and neglecting to in any manner warn this plaintiff by signs or other evidences of the low place or depression in said road.

"That the road at the point above indicated and described, has settled, due to the concrete slab being placed on filled ground; that said portion, after settling, has been partially repaired by the pouring of tar or asphalt at said point; that at the place of the happening of their injury and damage, it being the north portion of said road, the south side thereof has been leveled considerable with tar, asphalt and other paving material, but the north portion provided for west-bound traffic has been permitted to be and remain in an unsafe and defective condition."

One witness testified for the plaintiff that during 1930 he was patrolman for the state highway system. He had charge of the portion of the highway where the accident in question occurred. He testified that he noticed the pavement at the point in question settling about a month before the accident. He reported it to Mr. Simonds, who was the supervisor of this portion of the state highway system. He testified that six or seven days after this, highway trucks came and repaired the road with bituminous macadam. He testified further that subsequent to the happening of the accident in question the highway commission made some further repairs to the highway at this point. Other than this he did not testify as to the condition of the highway at the time the injury occurred.

Another witness testified that he worked for the contractors who built the road while it was being constructed. He testified that on the day before the trial he had measured the extent of the repairs that had been made at the point in question. His testimony was that the repairs extended for about forty-five feet and for the whole width of the pavement. Asked the question as to the depression, he answered that it had been about three-quarters of an inch and had been filled in with tar. He did not testify as to the condition of the highway at the time of the accident.

The plaintiff testified as to the speed at which he was driving; that when he hit a bad place in the road his car bucked, threw him forward, hitting his head on the steering wheel, and the car eventually turned into the ditch. As to the condition of the highway he testified that he returned to the scene of the accident about two months after it happened and it looked like four or six inches of gravel or soil or asphalt or something had been put there to make it level with the rest of the pavement. He testified as follows:

"Q. Mr. Snyder, are you able to tell the jury about how much of a depression or drop, so-called, was there on December 17, 1930, that is your best judgment of it based on the experience that you had, and two months after-

wards when you said you came back? A. I would judge it was about six to eight inches drop or settlement."

The above is substantially all the evidence introduced by plaintiff as to the condition of the highway.

At the close of the case for the plaintiff the defendant interposed a demurrer to the evidence on the ground, among others, that the evidence did not prove facts sufficient to establish a cause of action in favor of the plaintiff. This demurrer was overruled.

One witness who was called by the defendant testified that there was a dip of an inch or so. When the case was submitted to the jury a verdict for plaintiff was returned in the amount of $1,000. Special questions were answered as follows:

"5. On December 17, 1930, was there a defect in the slab on highway No. 5 at a point approximately one-quarter (¼) of a mile west of the Brenner Heights road and between the Brenner Heights road on the Fairdale road? A. Yes.

"6. If you answer question No. 5 in the affirmative, state what constituted such defect and the size of it. A. Settling of filled ground four feet by eighteen feet, and breaking and settling of slab causing a depression of one (1) inch or more."

The defense then moved for judgment on the special findings notwithstanding the general verdict, which was denied. That motion and the demurrer to the evidence will be treated together.

It will be seen that there was no evidence as to the condition of the pavement on the night the plaintiff was injured other than that of the witness who testified that there was a dip of an inch or so. Both of the witnesses, other than the plaintiff himself, who testified in behalf of the plaintiff, told of what repair work had apparently been done, and plaintiff asks us to infer from this that the pavement was in a defective condition. This does not follow. For all that appears in this record the repair work about which witnesses testified might have been done before the happening of the injury. This evidence was allowed to go to the jury, and the answers to special questions Nos. 5 and 6 were that the defect was about four feet long and as wide as the pavement and an inch or more deep. The only witness who offered any evidence that the depression was more than an inch was the plaintiff himself. He answered such a question in the manner that has heretofore been set out in this opinion. That statement that the depth of the depression was five or six inches was based on what he saw of the repairs that had been made two

months after the accident occurred. This evidence was inadmissible. There was no evidence in the record as to when these repairs were made. As far as this record shows, and as far as the witness knew when he testified, the repairs he says he saw may have been made to cure a condition that came into the highway after the happening of the accident which was the cause of this action, or they may have been put there before. Plaintiff could offer no testimony whatever of his own knowledge as to the existence of any defect in the highway on the night that he was injured.

When the entire record is examined we are led to the conclusion that what finding No. 5 means is that the depression was about an inch deep. We reach this conclusion because all the admissible evidence is to that effect. Having reached that conclusion, we will consider the question, Is a depression in a concrete pavement extending clear across the pavement and about four feet long and about an inch deep such a defect as was contemplated by the legislature in the enactment of R. S. 1931 Supp. 68-419?

It is well settled that the question of whether an alleged defect comes within the purview of the statute fixing liability is a question of law. (See *Gorges v. State Highway Comm.*, 135 Kan. 371, 10 P. 2d 834.) The highways of the state are intended for travel. The funds of the highway commission are intended for the construction and maintenance of a state highway system. Now, if a condition such as that described here should be held to be a defect all travel across the state would be over detours while the depressions were being repaired and all the money in the state highway fund would be expended in curing such conditions. We do not believe the safety of the traveling public requires any such holding. We are persuaded that such a condition is not a defect as a matter of law.

The judgment of the trial court is reversed with directions to enter judgment for the defendant.