No. 32,331

R. E. Cheney, *Appellee*, v. The State Highway Commission, *Appellant*.

(45 P. 2d 864)

Opinion filed June 8, 1935.

*Wint Smith*, assistant attorney general, *Otho W. Lomax*, assistant attorney for the state highway commission, and *E. E. Pedroja*, of Eureka, for the appellant.

*Clay C. Carper*, of Eureka, and *George Siefkin*, of Wichita, for the appellee.

The opinion of the court was delivered by

Johnston, C. J.: This was an action for damages for the death of plaintiff's wife which resulted when plaintiff's automobile over-

turned when it struck an area of the state highway wherein the bituminous-mat type surface had become corrugated and washboardy. This condition is the basis of plaintiff's claim that the highway was defective. Plaintiff recovered, and the state highway commission appeals, alleging error in the order overruling its demurrer to plaintiff's evidence and the order overruling its motion for a directed verdict. Defendant filed no motion for a new trial.

The accident occurred the evening of December 11, 1933, on Kansas highway No. 11, some miles south of Eureka. Earlier in the evening plaintiff and his wife had driven south from Eureka over this same highway. It was on their return north to Eureka that misfortune overtook them. Plaintiff was driving a Hudson sedan in good mechanical condition. His lights were on bright. He alleged that upon reaching the defective place in the highway the "automobile violently and abruptly swerved to the right from its natural course upon the highway and turned over and crashed into the ditch on the east side of the highway," thereby fatally injuring the wife of plaintiff. The defective condition of the highway is pleaded as follows:

"That said unsafe, dangerous and defective condition consisted of many ruts and depressions on the surface of the highway, and corrugated places extending from the east to the west side of the traveled surface of said highway, varying in depth from three to five inches, and covering a distance of approximately twenty-five feet from north to south. That said defect and condition existed on the north slope of a small hill and in such a position upon said highway that it was practically impossible to see and observe the same when coming from the south until the approaching vehicle was within a few feet of the point where said dangerous, defective and unsafe place was located on the highway."

The jury made the following special findings:

"1. How wide was the traveled portion of the highway at the place of the accident? A. 17½ ft.

"2. Do you find there was a defect in the highway? A. Yes.

"3. If you should answer the last question in the affirmative, then state fully and in detail the nature of the defect. A. Rough and corrugated from 1 to 4 inches deep extending 15 to 25 feet north to south. Corrugations from 1 to 3 feet apart. Impossible to see coming from south more than 50 feet.

"4. If you find that there was a defect then give the name or names of the person or persons if anyone who had five days' notice of the existence thereof. A. Grady, Wiggins, Stenger.

"5. At the time the plaintiff approached and at the time he drove onto the alleged ruts or corrugations did he exercise the care and caution that would have been exercised by an ordinarily careful and prudent driver under the same or similar circumstances? A. Yes."

There are two questions in the case. Did defendant have five days' notice of the condition of the highway? and Was the highway defective within the meaning of R. S. 1933 Supp. 68-419? Contributory negligence of plaintiff is claimed, but the jury found he exercised the care and caution of an ordinarily careful and prudent driver. The evidence sustains the finding. Besides, defendant's evidence to establish such negligence consists merely in the inference of excessive speed to be drawn from the fact that the car, a heavy one, weighing 4,400 pounds, apparently turned completely over and at a point 75 feet beyond the bad place in the road. It is clear defendant did not establish contributory negligence.

The jury found that Grady, Wiggins, and Stenger, employees of defendant, had the necessary five days' notice. The question arises on a demurrer to the evidence, and there is an abundance of evidence in the record to sustain this finding. Stenger was defendant's foreman in Greenwood county, and on November 15, prior to the accident, had made repairs on this highway both north and south of the place in question, and must necessarily have passed it. Wiggins had been in the employment of defendant for a year doing maintenance and construction work. He was listed with defendant as a truck driver. He testified he was acquainted with the place where the accident occurred; that he had traveled over it three times a week from September to December 11; that the condition gradually became more pronounced and that Stenger had ordered out material for the repair of this particular spot, which was delivered December 8, three days prior to this casualty. Grady, division engineer of defendant, testified he had been over this highway a number of times; that he covered these roads on an average of once every two or three weeks. This evidence was sufficient. (*Williams v. State Highway Comm.*, 134 Kan. 810, 8 P. 2d 946.)

Coming now to the condition of the highway which occasioned this lawsuit, the jury found that a defect existed, and that it consisted of corrugations from one to four inches deep, separated from one to three feet, and extending fifteen to twenty-five feet along the highway, and which could not be seen for more than fifty feet by a driver coming from the south. These findings are not challenged, and the evidence supporting them is to be considered as admitted in considering defendant's demurrer. The evidence was that this particular place in the road had been bad for a long time. As early as July 15 a witness, driving to Eureka in the daytime,

struck this corrugated place and her car swerved and she experienced difficulty in righting it. She testified the place got rougher thereafter. Several witnesses testified they had experienced difficulty in keeping control of their cars at this place. One said his car was "pretty near taken away" from him. Another that his car "took to the ditch." Harold Smith, who lived in the neighborhood and was familiar with the road, had been over the road a few days prior to the happening here involved. He testified:

"Q. Did you have any trouble at this particular place on the night of December 9? A. Yes, sir.

"Q. What kind of trouble did you have? A. I hit this rough place and broke a spindle bolt and it let the wheel down and threw it back under the car and broke a tie rod, and every time I would hit one of these ditches it jerked the steering wheel, and I never thought about trying to get it stopped. All that was on my mind was to keep it in the road, and we went about forty yards before I stopped and was thrown in the right-hand ditch."

Plaintiff testified respecting his experience, as follows:

"Q. Tell the jury in your own way just what occurred, Doctor. A. Well, what really happened as we approached this particular spot, it was in bad condition and the car was suddenly jerked to the right and I was thrown into the ditch and my wife was thrown out and clear of the car, and I was still in the car.

"Q. Prior to the time you went into this place could you see that it was in a defective condition? A. I had no reason to think of it at all. I didn't see anything to warn me at all, no signs.

"Q. Was it after dark? A. Yes, sir.

"Q. Lights on? A. Yes.

"Q. Bright or dim? A. The bright lights were on.

"Q. Did the lights of your car reflect any dangerous or defective condition in the highway to you? A. Not noticeably; no, sir.

"Q. Can you tell what happened when your car struck this place? A. Well, it just took a sudden lurch to the right and nosed into the ditch, and the next that I knew of, it was on its wheels facing north, the way we were traveling, in the ditch.

. . . . . . . . . . . . . . .

"Q. You didn't really know you were coming to that place? A. No, I wouldn't say I had any warning whatever that there was anything dangerous ahead."

. . . . . . . . . . . . . . .

"Q. Did you have any control over the car after it hit that place? A. None whatever. It was in the ditch before I had a chance to control it.

"Q. It jumped? A. Yes.

"Q. How far did it jump, Doctor? A. About the usual distance a person travels on the edge of the road, perhaps the distance between you and myself."

Defendant argues that as a matter of law the condition as it existed did not amount to a defect, but was merely a common, ordinary condition that should have been expected by users of the highway, and points out that a bituminous-mat surface is only one stage removed from the usual sand and gravel road. We cannot agree. It is true, as has been said by this court, that there is and can be no foot-rule by which to measure conditions and determine with precision the existence or nonexistence of a defect. But considering all the circumstances involved here, we hold the condition was one for which defendant should be made to respond in damages. It was a fair question for the jury. The facts in this case are quite similar to those involved in *Williams v. State Highway Comm.* There the road was of sand and gravel; there were two holes just over the brow of the hill; the holes were respectively four and five inches deep. The court said:

"Here the result of running into the holes appears to have jerked the car from the control of the driver, followed by the overturning of the car and the fatality mentioned. A condition of a highway which renders it dangerous for the public traveling over it is certainly a defect. The evidence tends so strongly to show that the highway was in a dangerous condition that whether it amounted to a defect under the statute became at least a question for the determination of the jury." (p. 813.)

In that case one of the holes was an inch deeper than the depressions were found to be in this case. But, irrespective of slight differences, the results were the same: the wheel was jerked from the driver's hands, he lost control, the car overturned, and an occupant was killed. In such a situation, to use the expressive statement of Mr. Justice Dawson, in *Collins v. State Highway Comm.*, 138 Kan. 629, 631, 27 P. 2d 216, "it seems useless to debate the point whether the road was defective as a matter of law."

Plaintiff alleged damages for funeral expenses of $635.50, his car was wrecked and his wife lost her life. The jury's verdict was for the sum of $1,500, a grossly inadequate amount. Although plaintiff filed a motion for a new trial on the ground of damages alone, he filed no cross appeal and the question is not open to review.

The judgment is affirmed.