No. 32,011

Jessie Douglas, *Appellee*, v. The State Highway Commission, *Appellant*.

(46 P. 2d 890)

Opinion filed July 6, 1935.

*Wint Smith*, assistant attorney general, *J. O. Rankin*, of Paola, and *Otho W. Lomax*, of Cherryvale, for the appellant.

*C. Clyde Myers, Harry Hayward*, both of Kansas City, and *Karl V. Shawver*, of Paola, for the appellee.

The opinion of the court was delivered by

Hutchison, J.: This was an action to recover damages from the state highway commission on account of injuries sustained by the plaintiff, the proximate cause of which is alleged to have been a defect in state highway No. 7, in Miami county, about a mile north of Hillsdale, and about 100 feet north of a bridge over Cottonwood creek.

The answer was a general denial with a plea of contributory negligence. The case was tried by a jury, which failed to agree upon a verdict, and it was on that account discharged. At the close of plaintiff's evidence defendant demurred thereto and when the evidence was concluded defendant requested an instructed verdict. Both the demurrer and the request were overruled and this appeal by the defendant is from those rulings.

The petition mentioned defective wing walls to a bridge over Cottonwood creek, near where the injury occurred, but we understand from the brief of plaintiff that reliance is placed on the defects in the highway as the proximate cause of the accident. In the consideration of the ruling on the demurrer to the evidence of the plaintiff, the first question that arises is, whether the existence of a defect

in the highway under the statute is a question of fact for a jury or a question of law to be determined by the court. Generally speaking, such a question is one of fact for the jury, but this being purely a statutory liability, the question of whether the alleged defect comes within the purview of the statute is a question of law. (*Gorges v. State Highway Comm.*, 135 Kan. 371, 10 P. 2d 834; *Snyder v. State Highway Comm.*, 139 Kan. 150, 30 P. 2d 102; and *Hanna v. State Highway Comm.*, 141 Kan. 135, 40 P. 2d 472.)

R. S. 1933 Supp. 68-419 provides that—

"Any person who shall without contributing negligence on his part sustain damage by reason of any defective bridge or culvert on, or defect in a state highway, not within an incorporated city, may recover such damages from the state of Kansas; . . ."

The plaintiff was returning with her husband, Doctor Douglas, and other members of her family from Kansas City, Mo., to Osawatomie, Kan., their home, on May 22, 1933, on highway No. 7, in a 1930 Chrysler six of the sedan type, known as a royal sedan. They left Kansas City about eleven o'clock at night and the accident happened about midnight. The lights and brakes on the automobile were in good condition. The driver could see clearly with his lights for a distance of 100 to 125 feet with the bright lights, and from 50 to 100 feet with the dimmers. No. 7 highway was paved with concrete and brick from Kansas City to Spring Hill, but from there south through Hillsdale to Paola it was paved with gravel or chat. They had gone to Kansas City the evening of the day before over this same highway. They were traveling on the concrete road between Kansas City and Spring Hill at around forty miles an hour, and slowed down to thirty-five miles an hour on account of the chat road. They were on the west side of the center of the highway, as close to a ridge of chat on the west side of the road as one could go safely.

The petition describes the defects in the highway as follows:

"About 100 feet north of said bridge the pavement had been suffered to become defective, and contained numerous holes in the surface and traveled way, bearing from slight depressions to holes twelve to twenty-four inches in diameter and five or six inches deep. Furthermore, there were two fairly even rows of holes running parallel with the highway and . . . occupying approximately the center ten feet of the road for a distance of about 100 feet. The holes in said rows were more or less regular in form and position, occurring every two or three feet, and were from four to five inches in depth and a foot

in diameter, and in addition to said rows of holes, the entire highway for at least 100 feet north of said bridge was spotted with other holes."

The testimony of Doctor Douglas concerning the defects in the highway is substantially as follows: That at about seventy-five feet or more north of the bridge they hit this rough piece of road and it made the car bounce around the center of the road and hit another car and went into the ditch. The road was washboardy. There were waves in the road and then there were chuckholes in the road, too. The washboards or waves were just continuous, one after the other for a distance of seventy-five feet or more. There were chuckholes along there. A chuckhole is a hole in the road ranging from six to eighteen inches in diameter and anywhere from two to five inches deep. They were numerous—quite a few there. When the car hit the chuckholes and washboards it began to bounce and the front end flew to the east a distance of twenty to twenty-five feet till it hit the other car. He tried to stop the car but couldn't; it hit the other car and it locked his wheel and threw them across the road east. This washboardy effect was in the middle of the road and clear over to the west side. All four wheels of his car hit these holes. He lost control of the car temporarily when they hit the chuckholes and it threw the front wheels to the east and the back ones to the west. It was fair weather that night, but had rained previously, rather heavy rain. The road was wet or slick. He could see down the highway fifty to seventy-five feet and maybe 100 feet. The accident occurred north of the bridge. He lost control of the car when he hit the washboardy effect. It jerked him around and he couldn't get to the brakes. He did not apply the brakes at all. The chuckholes ran clear across the road, which was twenty to twenty-five feet in width. They were all over the road. The first one north of the bridge he estimated was 75 to 100 feet from the bridge. The chuckholes were eight or ten inches across. They were round, but not exactly circular, and from two to four inches deep and some deeper. Some of the sides of the chuckholes were perpendicular and some tapered. Both tracks for the automobiles had these corrugations or washboard effect. The washboard would be about two to three inches deep from the top to the bottom. The chuckholes were all through the washboard. There were not at that place any level places on the road. They were clear across the road and extended about 100 feet north of the bridge. They were easily seen in the light of the cars after the accident. He

did not notice them particularly when they were going to Kansas City. They were on the other side of the road. The east side was not as bad as the west side. It was daylight and just about sundown when they passed this place the night before going to Kansas City. Doctor Douglas noticed several bad places in the road going to Kansas City the night before. He might have been driving between thirty-five and thirty-eight miles per hour at the time of the accident. The road looked all right as far as he could see by the lights. He never saw the holes in the road before nor until he made the examination after the accident.

The plaintiff testified in substance that they were going forty-five or fifty miles an hour on the road north of Spring Hill and slowed down to thirty or forty miles an hour on the chat road. Going into the place with the washboardy effect it looked all right and they couldn't tell it was bad until they got into it and kept bouncing and the back wheels slid around and threw the front wheels, and at this time the other car was right on them and the cars hit. It didn't bounce the occupants out of their seats. There was nothing to obstruct their vision as they came down the highway.

Other witnesses for plaintiff testified about the defects in substance as follows:

Witness Peck: The road was awfully choppy—the whole road that day and particularly at that place in the road. Choppy means just a common condition of graveled roads. They get washboardy, and that was a pretty washboardy place. They were deeper than any other place he noticed on the road. The whole road was bad at that particular time.

Witness J. L. Johnson: The highway was washboardy and bad throughout the curve from Hillsdale—in awful bad condition. Right north of the bridge and one other place were the two worst places in the road. The cut-outs were deeper, he thought three or four inches deep and about twelve inches wide. There were plenty of them, just continuous. This road condition was just a common ordinary graveled-road condition. It has been bad there for quite a while, six months or better, and still bad at the present time— wavy, washboardy. It is a comparatively new road. It was that way two miles or more.

Witness Hays, a highway engineer: The road was chucky and washboardy at that particular place; heavy travel over it. There were heavy rains that week. It was a common practice to throw

dirt in washboardy places. This condition depends upon the weather, the moisture and rainfall.

Witness Tabb: The road was muddy and rutty. Just north of the bridge it was rough with ruts made by truck tires; chuckholes; deep and rough places in the track, some of them five or six inches deep and some of them a foot wide. They gave the witness no trouble going through. He slowed down. It was pretty muddy. He could see the rough places with his lights as he drove through. Saw the condition and didn't go fast. The ruts ran parallel with the road and not crosswise, and the rough places were in the tracks, also wavy places in the tracks—generally bad after rainy weather.

Witness Mabel Hays: The washboardy effect was in the highway near the bridge extending about a mile or a mile and a half.

In *Watson v. Parker Township*, 113 Kan. 130, 213 Pac. 1051, it was said:

"The trial court's definition of a defective road is complained of. A defective highway within the meaning of the statute . . . is simply a public road which is dangerous to the traveling public." (p. 135.)

In *Collins v. State Highway Comm.*, 134 Kan. 278, 5 P. 2d 1106, it was said:

"There is no legal foot-rule by which to measure conditions generally and determine with precision whether a condition constitutes a defect. Some conditions may be so patently dangerous that a verdict denying defect would be promptly set aside. Other conditions may be so trifling that a verdict of defect would be promptly set aside." (p. 283.)

In *Williams v. State Highway Comm.*, 134 Kan. 810, 8 P. 2d 946, it was said:

"A condition of a highway which renders it dangerous for the public traveling over it is certainly a defect." (p. 813.)

The question of law is, upon the demurrer to the plaintiff's evidence, Was the highway as above described dangerous to the traveling public? Without any legal foot-rule by which to measure such conditions, it must be compared with general conditions and surrounding circumstances. Chuckholes and corrugations, as described in the above testimony, if existing in a cement or brick road where greater speed in traveling ordinarily prevails, would doubtless be regarded as dangerous to the traveling public, while they might not be so regarded if existing in an ordinary dirt road. Who would venture to say that deep ruts even with chuckholes in them would constitute in a dirt road a statutory defect? Neither would mud holes or

chuckholes on the general surface of a dirt road be urged as a defect under the statute. The evidence above set forth gives the natural tendency of gravel or chat roads to become more or less corrugated in wet weather. Some of the witnesses said choppy meant just a common condition of graveled roads, especially after rainy weather. The road was wavy, washboardy, they said. One witness said they gave him no trouble going through. He slowed down.

The plaintiff and her husband both said they slowed down when they left the concrete road at Spring Hill and entered upon the gravel or chat road. If the same foot-rule is to be used in measuring a defect on a gravel or chat road as on a concrete road, there would be no reason or purpose in slowing down when entering such a road. If this choppy condition was a common condition of gravel roads, especially after a rain, it would not be a surprise to anyone accustomed to the use of gravel roads. We are told there are corrugated roads in timbered countries over swampy stretches that are perfectly safe if one slows down reasonably, but extremely dangerous if attempted to be crossed at high speed.

All the witnesses for the plaintiff, including the plaintiff herself and her husband, the driver of the car, stress the matter of the washboard or corrugated effect of the road at the place of the accident, and the husband also speaks of the chuckholes and ruts. If such is the common condition of a well-traveled graveled road in wet weather, although perhaps under some of this evidence somewhat worse than usual along other parts of the same road and other graveled roads, are such chuckholes, waves and ruts such defects as are within the meaning of the statute?

In the Collins case the fact that the shoulder on one side of the concrete slab of the highway was eighteen inches below the slab and filled with water level with the slab for considerable distance was held to be a defect in the highway because careful drivers frequently find occasion to use the shoulder adjoining the slab.

In the Williams case the defect consisted of two holes in a sand and gravel road near the top of a hill where the driver in descending the hill could not see the holes until he had crossed the top of the hill and was practically upon them. The two holes were near together and about two feet long, ten inches wide and four or five inches deep.

In the Watson case the defect was not in the usually traveled part of the road but in a ditch at the side of the traveled portion thereof,

which ditch was not maintained for drainage, but had been dug by an adjacent landowner to make an embankment against flood water, and it was thickly covered with weeds; so much so as to conceal the ditch.

In the case of *Collins v. State Highway Comm.*, 138 Kan. 629, 27 P. 2d 216, the defect was one chuckhole about two or three feet long, eighteen inches or two feet wide and six or eight inches deep, located about two feet from the center of the graveled road, and this chuckhole had been ineffectively repaired a short time before the accident occurred.

In the recent case of *Cheney v. State Highway Comm.*, ante, p. 149, 45 P. 2d 864, the findings of the jury and the evidence were by this court held to show a defect in the bituminous-mat type of road becoming corrugated and washboardy where it was shown and found that the defect consisted of corrugations from one to four inches deep, separated from each other one to three feet and extending fifteen or twenty-five feet along the highway and which could not be seen for more than fifty feet by a driver coming from the south. The reason it could not be seen was shown by the petition to have been because the defect was on the north side or slope of a little hill and it could not be seen by one coming from the south until the hill was crossed.

It will be observed in nearly all of the cases thus far cited herein the defects were obscured from the view of the driver in one way or another, either by standing water or weeds at the side of the road or the chuckholes or washboardy effect being just over the top of a hill.

In the case of *Snyder v. State Highway Comm.*, 139 Kan. 150, 30 P. 2d 102, it was held:

"In an action against the state highway commission on account of injuries caused by an alleged defect in a state highway, it is held that a depression in a paved highway extending across the entire width of the pavement about four feet long and about one inch deep is not a defect within the meaning of R. S. 1931 Supp. 68-419." (Syl.)

"The highways of the state are intended for travel. The funds of the highway commission are intended for the construction and maintenance of a state highway system. Now, if a condition such as that described here should be held to be a defect all travel across the state would be over detours while the depressions were being repaired and all the money in the state highway fund would be expended in curing such conditions. We do not believe the safety of the traveling public requires any such holding." (p. 153.)

The same general view, as above expressed, has been taken in cases involving negligence of municipalities in permitting slight defects in pavements to exist and continue. It was said in the recent case of *Ford v. City of Kinsley*, 141 Kan. 877, 44 P. 2d 255:

"Slight and inconsiderable defects in the sidewalk of a city street do not furnish basis for actionable negligence, even though a pedestrian may trip, fall and injure herself on account of such a trivial defect." (Syl. ¶ 1.)

And in the same case the rule announced several years ago in the case of *Evans v. City of Hutchinson*, 99 Kan. 477, 162 Pac. 342, was criticized. (See, also, *Doyle v. City of Herington*, ante, p. 169, 45 P. 2d 890.)

In *Doherty v. State Highway Comm.*, 140 Kan. 686, 38 P. 2d 95, it was said:

"Gravel, or small stone, on a highway, is so common that to hold the highway commission liable for an injury resulting therefrom, as described in this petition, would be to make the maintenance of state highways prohibitive." (p. 687.) (See, also, *Hanna v. State Highway Comm.*, 141 Kan. 135, 40 P. 2d 472.)

It seems from the testimony of plaintiff's witnesses that the corrugated or washboardy effect, chuckholes and ruts described in this case may have been a little worse than just the common, ordinary graveled-road condition in wet weather, but certainly not enough different from what most of them describe as usual and ordinary to make its condition a defect under the meaning of the statute, unless we say that any and every gravel or chat road is defective and dangerous to the traveling public in wet weather, in level places and where it can ordinarily be seen. ·

We conclude that the demurrer to the evidence of plaintiff should be sustained. It is so ordered.