No. 37,690

Duane Shafer, by Emma Shafer, his mother and next friend, *Appellee,* v. State Highway Commission of Kansas, *Appellant.*

(215 P. 2d 172)

Opinion filed February 28, 1950.

*Henry L. Daniels,* of Topeka, argued the cause, and *Stanley Taylor,* attorney for the state highway commission, and *C. C. Linley,* of Cimarron, were with him on the briefs for the appellant.

*James A. Williams,* of Dodge City, argued the cause, and *Carl Van Riper, C. W. Hughes, Jack G. Voshell,* and *J. J. Mangan,* all of Dodge City, were with him on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This action was instituted pursuant to what is commonly known as the defective highway statute, G. S. 1935, 68-419. Plaintiff prevailed and the state highway commission has appealed.

Appellant assigns ten specifications of error. An examination of the record convinces us most of them are without substantial merit. Nothing would be added to our body of the law on the subject involved by a detailed treatment of all the alleged errors. Following a brief statement pertaining to appellee's journey we shall go directly to the vital issue in the case. It pertains to the nature of the defect alleged in the petition, what the jury found it to be and whether the injury was caused by a defect within the purview of the statute.

Appellee was a boy about eighteen years of age. He and his brother, Virgil Dean Shafer, were making a trip together on the latter's motorcycle from Lacon, Ill., to Tucson, Ariz., making stops on the route to visit relatives. Virgil Dean was seeking employment in a warmer climate. The vehicle was equipped with a buddy seat to carry a passenger in addition to the driver. The seat was standard

equipment such as made by the manufacturers of motorcycles. It was approximately two feet to thirty inches in length and was shaped so the driver could sit on the front part and the passenger could sit behind him comfortably. The handles reached to the back where the passenger could hold on to them. The motorcycle also had a separate foot rest for the passenger in addition to the floor boards for the driver's feet. Regular saddle bags were attached to the vehicle. In the back part of it behind the passenger a carrier was fastened. A little platform, the size of a suitcase, was bolted to the carrier, in which the boys had strapped a suitcase containing clothing. Appellee thought the suitcase weighed approximately fifty to sixty pounds. He thought it might have weighed seventy pounds.

The driver was killed and the passenger, appellee, sustained serious injuries.

The pertinent portion of the petition alleged:

"That at a point approximately two and one-half (2½) miles West of the City of Cimarron, in Gray County, Kansas, said U. S. Highway 50 South slopes downward in a Westerly direction from the brow of a low rise or grade for a distance of approximately three hundred (300) yards to a point where said Highway is crossed by a culvert or bridge which is a part of said Highway system; that said Highway rises on a slight up-grade to the West of said culvert or bridge. That at the point in question, said Highway is surfaced with an oil coating or mat, commonly called 'black-top.' That on the 16th day of June, 1947, and for more than a week prior thereto, a defect existed in said Highway immediately adjacent to the West side of said culvert or bridge; that said defect consisted of a hole in said Highway which was four (4) to eight (8) inches in depth, was approximately fourteen (14) feet long extending from the North side of the oil mat of said Highway past the center line thereof and over into the South part thereof, was approximately six (6) to eight (8) feet wide from East to West, and that the East side of said hole was immediately adjacent to the West edge or side of said bridge or culvert; that the sides of said hole were almost perpendicular. That at the time mentioned herein there were no flags, flares or other warning devices placed about said defect by Defendants which would in any way warn travelers upon said Highway of the danger surrounding said defect.

"4. That at approximately 12:30 p. m. on said 16th day of June, 1947, the Plaintiff and his brother, Virgil Dean Shafer, were riding a motorcycle in a Westerly direction on said U. S. Highway 50 South, West of Cimarron, Gray County, Kansas. That said Virgil Dean Shafer was the owner, driver and operator of said motorcycle, and that Plaintiff was riding behind him on it. That said Highway between said City of Cimarron and the afore-mentioned defect was relatively smooth, and that said Virgil Dean Shafer was driving said motorcycle in a careful and prudent manner at a reasonable rate of speed, to wit: fifty to fifty-five (50-55) miles per hour. That without any warning

said motorcycle struck the afore-mentioned hole and defect in said Highway, adjacent to said culvert or bridge, and said motorcycle was thrown violently into the air and out of the control of its driver; that said Virgil Dean Shafer struggled to maintain control thereof but that finally said motorcycle went into the ditch along the North side of said Highway and overturned. That Plaintiff was thrown from said motorcycle and struck the ground in said ditch with great force and violence and sustained the injuries hereinafter complained of.

"5. That said defect in said Highway was the sole, immediate, and proximate cause of said motorcycle going out of control, and of the resultant injuries to Plaintiff. That there were no warning devices about said defect, and that the same was not easily discernible to travelers upon the Highway."

The jury answered certain questions as follows:

"1. Q. Do you find that a defect as defined in the Court's instructions existed on the highway at the time and place of plaintiff's accident? A. Yes.

"2. Q. If you answer question No. 1 in the affirmative describe fully and in detail such defect or defective condition. A. Depression in roadway 18 feet East by West—20 feet North and South, with chuck hole approximately 3½ or 4 inches deep by 30 inches across.

"3. Q. If you answer question No. 1 in the affirmative do you find that the Director of Highways, State Highway Engineer, or any member of such State Highway Commission, or any foreman, patrolman, or other employee in charge of the construction, maintenance or upkeep of such highway had five days' actual notice of such defect? A. Yes.

"4. Q. If you answer the foregoing question in the affirmative then state the name of the person or persons who had such actual five days' notice? A. Barkley, Reynolds, Moore.

"5. Q. Do you find that plaintiff and his brother, Virgil Dean Shafer, were engaged in a joint enterprise or joint venture as defined in the court's instructions at the time and place of the accident herein? A. No.

"6. Q. If you answer question number 5 in the affirmative do you find plaintiff's brother guilty of any act or acts of negligence? A. ———.

"7. Q. If you answer question number 6 in the affirmative, state the acts which you find constituted negligence on the part of Virgil Dean Shafer. A. ———.

"8. Q. What do you find to be the proximate and direct cause of the accident? A. Defect in surface of the roadway.

"9. Q. What do you find to be the speed of the motorcycle upon which plaintiff was riding immediately prior to the accident? A. 60 miles per hour.

"10. Q. If you answer both questions Nos. 1 and 5 in the affirmative then state if there remained a sufficient portion of the traveled roadway over which plaintiff's brother with reasonable care could have safely operated said motorcycle? A. ———.

"11. Q. Was the plaintiff guilty of negligence at the time and place of the accident? A. No.

"12. Q. If you answer question No. 11 in the affirmative state specifically such act or acts of negligence. A. ———."

Answer No. 2 embraces two separate and distinct things. One is the depression in the roadway. The other is a chuckhole. It will be observed the finding did not state how deep the depression was or where the chuckhole was located in the roadway. There was evidence of broken areas in the pavement along the north side of the highway both east and west of the culvert which were thirty inches in diameter; that in such areas the surface was broken up, crumbled, loose but in place and also that it was not in place; that within such broken area it was rough in the bottom and the sides were jagged.

A similar condition existed on the extreme south side of the road. Some of the witnesses referred to both the north and south places as broken and crumbled areas and others referred to them as holes. Some of the witnesses referred to the area thirty inches across interchangeably as a hole and as a broken place. There was evidence by some of appellee's witnesses there was a hole on the north side of the road which extended across the center of the road and was four to six inches deep, and even deeper and that the sides of the hole were abrupt; the hole was the color of the blacktop and difficult to see.

The jury, however, found the chuckhole was three and one-half or four inches deep and thirty inches across and we are bound by that finding. A search of the record discloses no evidence the driver of the motorcycle struck the chuckhole. We, therefore, need not determine whether such a chuckhole in a blacktop road constitutes a defect within the purview of G. S. 1935, 68-419.

Did the depression constitute a defect? J. Francis Barclay, an assistant division engineer and appellant's witness, testified concerning the depression, in substance, as follows: There was a sunken area at the east side of the culvert where the fill had settled under the mat which extended across the road from one edge of the mat to the other; he estimated it was three to three and one-half inches deep and about ten feet long east and west; this entire sunken area was pretty well cracked but it was in place except in the area which was thirty inches wide on the north side east and west of the culvert where the blacktop was broken up and was lying in place but was loose.

Pearl Moore, a road maintenance man for appellant, but called as a witness for appellee, testified concerning the depression, in substance, as follows: There was a low place east of the culvert along

the north side of the mat; it was about ten feet long east and west and five feet north and south; it was approximately two and one-half to three inches deep in the deepest place; there was another hole on the south half of the road, the same kind of a place, a depressed place, with a hole in the center.

Another witness, Captain Tom Glasscock of the state highway patrol, subpoenaed by appellee, testified, in substance: He investigated the accident at 1:45 p. m. on the day it occurred; his field notes contained the data obtained in his investigation; the rough places were on the culvert and not east or west thereof; while his report indicated holes in the blacktop it was so marked by reason of the printed form provided by appellant; there actually were no holes; the blacktop was broken up in pieces; it was rough but the pieces were in place. That part of Captain Glasscock's report contained in the abstract reads:

"Motorcycle with driver and passenger going west on 50-South. They hit a low place in roadway and evidently lost control of vehicle. The cycle skidded and rolled 375 feet from low place in roadway to where it came to rest in ditch on north side of roadway. The cycle fell on driver and the passenger was thrown clear. Defective strip in roadway was 18 feet long where road bed was sunken about 3½ to 4 inches. Blacktop was broken and crumbled in tracks. There was a smooth strip 4 feet wide in center. Roadway 20 feet wide."

Appellee knew little about how the accident occurred. There was no other eye-witness to the accident. According to appellee's testimony the blacktop road west of Cimarron appeared to be in good condition. He and his brother ordinarily traveled approximately fifty to fifty-five miles per hour and that was about their speed at the time of the accident. They had no previous accident or near-accident on their trip. He did not remember whether he was looking at the road or at the surroundings at the time of the accident. He did not remember seeing any hole. The first thing he noticed was that the motorcycle was wobbling back and forth. The next thing he remembered was that he was lying on the ground and somebody was holding a blanket over him.

There was evidence: If a motorcycle was heavily loaded it would tend to hold to the road better but that if the motorcycle started into a wobble with a heavy load it would be more difficult to eliminate the wobble; a motorcycle wobble is similar to the shimmying of a car; a speed wobble results from more speed than the rider can handle.

Appellee reminds us the jury did not find the speed caused the wobble; that it found appellee was not guilty of negligence (finding No. 11) and found the proximate and direct cause of the accident was the defect in the surface of the roadway. This is true. (Finding No. 8.) We are, therefore, confronted with the question originally stated, namely, whether the depression in the road constituted a defect within the purview of the statute?

There is no legal foot-rule by which to measure conditions generally and determine with exact precision whether a condition constitutes a defect. Some conditions may be so patently dangerous as to clearly constitute a defect while others may be so trifling as to be clearly outside the purview of the statute. (*Collins v. State Highway Comm.*, 134 Kan. 278, 283, 5 P. 2d 1106; *Douglas v. State Highway Comm.*, 142 Kan. 222, 226, 46 P. 2d 890.) It is, therefore, the policy of courts to handle each case separately and to either include it in or exclude it from the operation of the statute. (*Gorges v. State Highway Comm.*, 135 Kan. 371, 373, 10 P. 2d 834.) Where the circumstances are such that an alleged defect cannot be excluded from the operation of the statute as a matter of law it presents a case for a jury. (*Watson v. Parker Township*, 113 Kan. 130, 213 Pac. 1051; *Collins v. State Highway Comm.*, supra; *Cheney v. State Highway Comm.*, 142 Kan. 149, 153, 45 P. 2d 864.)

The peculiar facts of earlier cases were carefully reviewed in the Douglas case, *supra,* and in *Espey v. State Highway Comm.*, 143 Kan. 873, 57 P. 2d 424. The facts of those cases need not be restated at length here. It is not contended any of the later cases involved facts which would be particularly helpful in the instant case.

Appellee thinks the question whether the evidence in the instant case discloses a defect was for the jury and leans heavily on *Williams v. State Highway Comm.*, 134 Kan. 810, 8 P. 2d 946; *Collins v. State Highway Comm.*, 138 Kan. 629, 27 P. 2d 216; and the Cheney case, *supra.* He stresses the statement in the Williams case, to wit:

"A condition of a highway which renders it dangerous for the public traveling over it is certainly a defect." (p. 813.)

The Williams case involved a sand and gravel road. In that case there were two holes, near the top of a hill, one four inches, the other five inches in depth. There was evidence the driver descending the hill could not see the holes until he was practically upon them.

The Cheney case involved a bituminous mat which was corrugated and washboardy. The accident happened at night. The places were one to four inches deep and extended fifteen to twenty-five feet north and south. The corrugations were one to three feet apart. They were on the north slope of a small hill. It was impossible for one coming from the south to see them for more than fifty feet after reaching the top of the hill. The jury found the driver exercised due care.

In *Collins v. State Highway Comm.*, 138 Kan. 629, 27 P. 2d 216 (a second Collins case), the condition which caused plaintiff's automobile to upset was a "chuck hole" about two feet long, eighteen inches or two feet wide and six to eight inches deep in a gravel road. The hole in the road was only about two feet from its median line.

In the instant case a view of the depression was not obstructed. Appellee argues the visibility of a defect is not a proper element of test. He insists the condition is, or is not, a defect and its visibility goes only to the question of contributory negligence. The pertinent portion of the statute reads:

"Any person who shall without contributing negligence on his part sustain damage by reason of any defective bridge or culvert on, or defect in a state highway, not within an incorporated city, may recover such damages from the state of Kansas. . . ." (G. S. 1935, 68-419.)

This court has held the want of reasonable opportunity to observe a road condition is a proper factor to be considered. (*Douglas v. State Highway Comm.*, supra; *Espey v. State Highway Comm.*, supra.)

Appellee stresses the fact this was a surfaced road and emphasizes a statement in the Douglas case, *supra*, in which a gravel and chat road was involved. The statement is:

"Chuckholes and corrugations, as described in the above testimony, if existing in a cement or brick road where greater speed in traveling ordinarily prevails, would doubtless be regarded as dangerous to the traveling public, while they might not be so regarded if existing in an ordinary dirt road." (p. 226.)

Appellant replies the instant road was not a cement or brick road but a blacktop road only one step removed from a chat or gravel road and that it is commonly known such a road is frequently uneven and wavy.

Appellant relies primarily on the Gorges and Douglas cases, *supra; Snyder v. State Highway Comm.*, 139 Kan. 150, 30 P. 2d

102, and cases previously cited in which the lack of visibility of a defect was emphasized. It also stresses the dissenting opinion in *Collins v. State Highway Comm.*, 138 Kan. 629, 632, 27 P. 2d 216. The facts in most of these cases were likewise reviewed in the Douglas and Espey cases, *supra,* and need not be restated here. In the Gorges case it was held an accumulation of ice on the highway was not a defect within the purview of the statute. The statement in the opinion relied on by appellant is:

"It is the duty of the state highway commission to keep the highway in a reasonably safe condition for public travel, and liability arises where, after notice, it permits defects to exist in the public highway. It is not, however, an insurer. The user of the highway is bound in all events to use due care, and to take notice of any defect that comes within his knowledge or vision." (p. 372.)

The principal point relied on in the Douglas case by appellant is the distinction there made with respect to the required upkeep of cement or brick roads on which the speed is ordinarily greater than on other types of roads.

In the Snyder case, *supra,* there existed a depression in the roadway. The jury found the defect to be:

"Settling of filled ground four feet by eighteen feet, and breaking and settling of slab causing a depression of one (1) inch or more." (p. 152.)

This court held that was not a defect within the purview of the statute.

The parties do not contend we have any decision factually in point. Our research has disclosed none. It is common knowledge numerous depressions and wavy places exist in blacktop roads. The traveling public is aware of this fact. Where depressions such as the instant one exist and are open to the traveler's view we think we would not be justified in holding they are within the purview of the statute.

The judgment is reversed with directions to enter judgment for appellant.

SMITH, WEDELL and ARN, JJ., dissent.