No. 40,753

LARRY K. EARNEST and GERALDINE J. EARNEST, Next of Kin of Gary Brent Earnest, deceased, *Appellees,* v. THE KANSAS STATE HIGHWAY COMMISSION, *Appellant.*

(320 P. 2d 847)

Opinion filed January 25, 1958.

*Roy G. Lowe,* of Olathe, argued the cause, and *Wm. B. Kirkpatrick,* Assistant Attorney General, was with him on the briefs for the appellant.

*Don B. Slechta,* of Russell, argued the cause, and *Robert L. Earnest,* of Russell, was with him on the briefs for the appellees.

The opinion of the court was delivered by

PRICE, J.: This is an action against the state highway commission by the parents of a six-year-old boy to recover for his death, alleged to have been proximately caused by a defect in a state highway.

The commission has appealed from an order overruling its demurrer to the petition.

The sole question is whether the petition sufficiently alleges a defect within the meaning of G. S. 1949, 68-419, which provides that any person who shall, without contributing negligence on his part, sustain damage by reason of any defect in a state highway, may recover such damages from the state of Kansas.

In the interest of accuracy, we quote the material portions of the petition:

"3. That on the 22nd day of January, 1956, and on all dates hereafter mentioned, Highway U. S. 50S was a public highway under the maintenance, supervision and control of the State Highway Commission of the State of Kansas and said highway U. S. 50S is a part of the State Highway System of the State of Kansas extending in an Easterly and Westerly direction through Finney County, Kansas; and that on January 22, 1956, said highway was open to traffic thereon; and that on said day and for many years prior thereto, U. S. Highway 50S was a concrete highway extending East of Garden City, Kansas, in Finney County and that previous to the time referred to herein, the exact time being to plaintiff unknown, but being well known to the defendant, said highway was being repaired by placing thereon a layer of asphalt or bituminous mat. That said resurfacing or repairing of said highway commenced at or near the city limits of Garden City, Kansas, and extended for some distance East from said city and said resurfacing or repairing was completed on both sides of said highway to a distance of about ten (10) miles from the East city limits of Garden City, Kansas, through Finney County, Kansas.

"4. That at a point approximately ten (10) miles Southeast of said city and outside the limits of any incorporated city, the resurfacing or laying of the mat was terminated on the West half of said highway for traffic traveling in a Southerly direction upon said highway. That the mat on the East half of said highway continued on for a distance of several miles. That where the mat was discontinued on the West half of said highway, there was created a drop-off from the level of the new mat to the surface of the old roadbed of some four (4) inches in depth. This condition being caused by the difference of the thickness of the new mat and the old roadbed. From the point of discontinuance of the new mat on the West half of said highway and the continuance of the new mat on the East half of said highway there was created a roadbed of different levels. This condition existing due to the difference of the thickness of the new mat on the East half of said highway and the old concrete roadbed on the West half created a dangerous and hazardous condition for safe travel to persons using said highway, including plaintiffs herein.

"5. That neither the plaintiffs nor any of the occupants of plaintiff's car were aware of the defects in the highway and that there were no signs, flares or warning devices of any nature whatsoever at or near the aforementioned point to apprise the traveling public and more specifically the plaintiffs herein, of the defective and dangerous condition existing on said highway.

"6. That the condition of said highway at the time and place previously described herein and the failure of the State Highway Commission and its

officials to properly display signs or other warning devices to notify the traveling public of the condition then and there existing constituted a defect in said highway within the meaning of G. S. 1949, 68-419, and was the sole and proximate cause of the injuries and damages sustained and herein complained of."

It is then alleged that on or about January 22, 1956, at four o'clock A. M., plaintiff father, accompanied by his wife and their two minor sons, was driving his automobile on the highway in question in a careful and prudent manner; that while so doing he encountered the four-inch drop-off, above described, which caused the car to swerve and skid into the raised portion of the new mat on the left-hand side of the highway causing him to lose control of the car, and that it skidded sideways off the roadway onto the shoulder on the outside of the highway and overturned in the right-hand ditch, resulting in the death of one of his sons.

Since the passage of the statute in question numerous cases arising under it have been before this court. Most of them are cited in the annotations following the statute number in G. S. 1949 and G. S. 1955 Supp. We call attention to three of the more recent decisions—*Shafer v. State Highway Commission*, 168 Kan. 591, 215 P. 2d 172; *Sheen v. State Highway Commission*, 173 Kan. 491, 249 P. 2d 934, and *Summers v. State Highway Commission*, 178 Kan. 234, 284 P. 2d 632.

From these, and the numerous cases cited in the opinions, it is clear that the following rules have become firmly established:

The question whether an alleged defect comes within the purview of the statute is, in the first instance, a question of law to be determined by the court. There is no legal foot rule by which to measure conditions generally and determine with exact precision whether a given condition constitutes a defect. Some conditions may be so patently dangerous as to clearly constitute defects, while others may be so trifling as to be clearly outside the purview of the statute. The policy of courts is to handle each case separately and either to include it in or exclude it from the operation of the statute. Where circumstances are such that an alleged defect cannot be excluded from the operation of the statute as a matter of law, it presents a proper case for a jury to determine. Without any legal foot rule by which to measure an alleged defective condition, it must be compared with general conditions and surrounding circumstances, and, in one sense of the word, the question whether

a given condition constitutes a defect within the meaning of the statute is relative.

In the determination of the question whether the petition sufficiently alleges a defect within the meaning of the statute (G. S. 1949, 68-419), its allegations are to be taken as true. Here we have a concrete highway which had been resurfaced with a four-inch layer of asphalt or bituminous mat for approximately ten miles southeast of Garden City. There was nothing to indicate to a driver that such excellent driving conditions would not continue on. But they did not, and suddenly, without warning of any kind, came to an abrupt end insofar as this driver was concerned. He was confronted with a four-inch drop-off in his traffic lane from which there was no escape. We doubt that it would be seriously contended that a four-inch depression or hole extending the entire width of a traffic lane would not be a defect. The allegations of this petition speak for themselves, and we have no difficulty in holding that the condition pleaded constitutes a defect within the meaning of the statute.

Defendant commission relies heavily on the Summers case, *supra*, but we fail to see the analogy. There the highway was of ordinary black-top construction. It is common knowledge that such type of surfacing tends to feather off and crumble at the edges, especially where it may have been subjected to the rigors of heavy traffic and severe weather conditions. The decision and reasoning of that case are not controlling on the question here presented.

Without further discussion, we are of the opinion the trial court correctly overruled the demurrer to the petition, and the judgment is therefore affirmed.