No. 50,393

DOROTHY SCHAEFFER, *Plaintiff-Appellee/Cross-Appellant,* v. KANSAS DEPARTMENT OF TRANSPORTATION AND THE SECRETARY OF TRANSPORTATION, O. D. TURNER, *Defendant-Appellant/Cross-Appellee.*

(608 P.2d 1309)

Opinion filed April 5, 1980.

*Donald S. Simons,* chief attorney, Kansas Department of Transportation, argued the cause and was on the brief for appellant.

*David Egan,* of Maples and Egan, of Peabody, argued the cause and *Edward J. Costello,* of Tampa, was with him on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: The Kansas Department of Transportation (DOT) and the Secretary of Transportation, defendants below, appeal from a jury verdict in favor of the plaintiff-appellee, Dorothy Schaeffer. Defendants will hereafter be referred to as DOT, the defendant or appellant. Plaintiff recovered a jury verdict for personal injuries received in a three-car collision on U.S. Highway 77-56 near Lincolnville. Plaintiff, pursuant to K.S.A. 1978 Supp. 68-419 (repealed, L. 1979, ch. 186, § 33), brought her action based upon a defect in the highway. Defendant contended no defect existed and plaintiff's injuries were the result of her husband's negligence in the driving of his vehicle.

On the night of April 1, 1975, plaintiff was a passenger in an automobile driven by her husband. At about 10:30 p.m., while traveling south on Highway 77-56 approximately three miles north of Lincolnville, the Schaeffer vehicle slid across the center line on the ice-covered highway, struck the left front of an oncoming vehicle and then struck a third vehicle which had also been proceeding north. The third vehicle was stopped, waiting to make a left turn into private property. Michael Schaeffer, driving

at a speed of about 35 - 40 mph, was unfamiliar with the highway. The road was covered with sleet and ice and at the crash site there is a small hill (referred to by the experts as a vertical curve). At the crest of the hill the road curves first to the east and then to the west in what is commonly referred to as an "S" or reverse curve. The curve itself is apparently well known to local inhabitants and is generally called "the Beneke curve" after the name of the owners of the adjacent property. The third automobile was occupied by members of the Beneke family who were preparing to enter their rural residential property. Plaintiff suffered extensive personal injuries and another passenger, Chuck Garrett, was killed. The jury allocated responsibility for the unfortunate accident 49% to DOT and 51% to Michael Schaeffer. The DOT has appealed. Plaintiff filed a notice of cross-appeal but has not pursued it.

Plaintiff's cause of action against the DOT is based upon alleged design and maintenance defects at Beneke's curve.

K.S.A. 1978 Supp. 68-419 (now repealed) provided in pertinent part:

"68-419. Action for damages against state for defect in bridge, culvert or highway; notice of defect; venue; service of process; time limitations; limitations on liability. (a) Any person who shall without negligence on his or her part sustain damage by reason of any defective bridge or culvert on, or defect in a state highway, not within an incorporated city, may recover such damages from the state. Such recovery may be from the state when the secretary of transportation, or state transportation engineer, geographic engineer, supervisor or foreman in charge of the construction, maintenance or upkeep of such highway, shall have had notice of such defects five (5) days prior to the time when such damage was sustained, and for any damage so sustained, the injured party may sue the secretary of transportation, and any judgment rendered in such case shall be paid from any funds in the state highway fund on the order of the secretary of transportation. . . .

(b) Neither the state or the secretary of transportation, or any officer or employee of the state or the department of transportation, shall be liable to any person for any injury or damage caused by the plan or design of any state highway, or of any bridge or culvert thereon or of any addition or improvement thereto, where such plan or design, including the signings or markings of said highway, bridge or culvert, or of any addition or improvement thereto, was prepared in conformity with the generally recognized and prevailing standards in existence at the time such plan or design was prepared."

The first issue presented by the DOT is that the trial court erred in not finding as a matter of law that no defects as contemplated by the statute existed. It is the plaintiff's contention that the

original design of the highway, constructed in 1929, did not meet prevailing standards then in effect, and that the highway was not constructed in accordance with the original plans and specifications. Plaintiff also contends a maintenance defect existed by reason of the lack of any warning sign advising the approaching motorist of the existence of Beneke's curve. The DOT contends the highway was properly designed and constructed by 1929 standards and that there was no maintenance defect as a warning sign was not required as a matter of law.

The long established rule as to whether an alleged defect comes within the purview of K.S.A. 1978 Supp. 68-419 is as follows:

"[I]n the first instance, [whether a defect is within the purview of the statute is] a question of law to be determined by the court. There is no legal foot rule by which to measure conditions generally and determine with exact precision whether a given condition constitutes a defect. Some conditions may be so patently dangerous as to clearly constitute defects, while others may be so trifling as to be clearly outside the purview of the statute. The policy of courts is to handle each case separately and either to include it in or exclude it from the operation of the statute. Where circumstances are such that an alleged defect cannot be excluded from the operation of the statute as a matter of law, it presents a proper case for a jury to determine. Without any legal foot rule by which to measure an alleged defective condition, it must be compared with general conditions and surrounding circumstances, and, in one sense of the word, the question whether a given condition constitutes a defect within the meaning of the statute is relative." *Earnest v. State Highway Commission*, 182 Kan. 357, 359-60, 320 P.2d 847 (1958).

*Martin v. State Highway Commission*, 213 Kan. 877, 518 P.2d 437 (1974), was an action under K.S.A. 68-419 based upon an alleged failure of the highway commission to install a guardrail. In *Martin* we held:

"The state's liability for a defect in a state highway is purely statutory, and the state has no liability under the statute (K.S.A. 68-419) unless the alleged defect in the state highway comes within the purview of its terms, and such determination is in the first instance a question of law for the court. The court has steadfastly adhered to the proposition that there is no legal foot-rule by which to measure conditions generally and determine with exact precision whether a condition in a state highway constitutes a defect. In the final analysis it is the policy of the Supreme Court to handle each case separately and to either include it in or exclude it from the operation of the statute." Syl. ¶ 1.

"Broadly speaking, highway defects may be categorized as 'design' defects which are built into a highway at the time it is designed and constructed, and 'maintenance' defects which arise by reason of the passage of time." Syl. ¶ 4.

"Regardless of whether a condition is characterized as a 'design' defect or a 'maintenance' defect, liability must be predicated on either (a) a failure to comply with a specific legislative mandate or (b) the existence of a condition creating actual peril to persons using the highway with due care." Syl. ¶ 5.

"While an apparently adequate design may prove to be unduly hazardous in practice, in the absence of evidence showing such a practical result the adequacy of a highway design is judged by the conditions prevailing at the time it is adopted and not in the light of later experience or changing conditions." Syl. ¶ 6.

Appellant argues that plaintiff failed in her burden of showing a design or construction defect based upon a failure to comply with 1929 standards. While the evidence as to the standards, if any, applicable in 1929 was contested and certainly was not strong, there was testimony that, if believed by the jury, would support a finding of a design defect. Claud McCamment and Thomas Van Wagoner both testified as experts for the plaintiff. Mr. McCamment was employed for nearly thirty years by the State Highway Department, the forerunner of the DOT, as the safety engineer in charge of all safety operations. Van Wagoner was also a safety engineer and both qualified as experts to the satisfaction of the trial court. It was the contention of the plaintiff that the combination of the vertical and horizontal reverse curves created a situation wherein there is insufficient "sight distance" for one traveling the highway from north to south. One approaching from the north is not made aware of the upcoming curves until reaching the crest of the hill, resulting in the driver being required to make an immediate change in direction to the left and then again back to the right. It was conceded that the original plans and diagrams for the 1929 construction called for a straight road at the point in question without the horizontal curves. Evidently the curves were built into the road to avoid a barn on the Beneke property and, presumably, avoid the necessity of condemning the Beneke barn. One of the experts for the DOT testified there were no standards for highway construction in 1929 and that the sight distance was adequate for speeds in excess of that of the plaintiff's automobile. Both Mr. McCamment and Mr. Van Wagoner testified the condition was a hazard and that proper warning signs should have been in place. In view of the conflicting expert testimony and other evidence, whether a design defect existed was a proper issue for the jury.

Plaintiff's second allegation of a defect was that the failure to post signs warning of Beneke's curve constituted a maintenance defect within the terms of the statute.

K.S.A. 8-2003 mandates that the Secretary of Transportation shall adopt a manual and specifications for a uniform system of traffic control devices and that such system:

"shall correlate with and so far as possible conform to the system set forth in the most recent edition of the manual on uniform traffic-control devices for streets and highways and other standards issued or endorsed by the federal highway administrator."

All parties agree that the 1971 federal Manual On Uniform Traffic Control Devices for Streets and Highways (manual) published by the U.S. Department of Transportation had been adopted and was legally applicable on April 1, 1975. The manual sets forth certain warrants or specifications describing the physical requirements necessary to justify the authorization and use of the various warning signs recommended by the manual. It is the position of the DOT that as the physical aspects of the highway did not come within the warrant's requiring a reverse curve sign, no maintenance defect existed as a matter of law. Pertinent sections of the manual provide in part:

1A-4. "In the Manual sections dealing with the design and application of traffic control devices, the words 'shall,' 'should' and 'may' are used to describe specific conditions concerning these devices. To clarify the meanings intended in this Manual by the use of these words, the following definitions apply:

1. SHALL - A *mandatory* condition. Where certain requirements in the design or application of the device are described with the 'shall' stipulation, it is mandatory when an installation is made that these requirements be met.

2. SHOULD - An *advisory* condition. Where the word 'should' is used, it is considered to be advisable usage, recommended but not mandatory.

3. MAY - A *permissive* condition. No requirement for design or application is intended." pp. 5-6.

2A-1. "Signs should be used only where warranted by facts and field studies. *Signs are essential* where special regulations apply at specific places or at specific times only, or *where hazards are not self-evident.* They also give information as to highway routes, directions, destinations and points of interest. Signs ordinarily are not needed to confirm rules of the road." p. 11. (Emphasis added.)

2A-6. "Care should be taken not to install too many signs. A conservative use of regulatory and warning signs is recommended as these signs, if used to excess, tend to lose their effectiveness. On the other hand, a frequent display of route markers and directional signs to keep the driver informed of his location and his course will not lessen their value." p. 13.

2A-7. "Functionally, signs are classified as follows:

Regulatory signs give notice of traffic laws or regulations.

Warning signs call attention to conditions on, or adjacent to, a highway or street that are potentially hazardous to traffic operations.

Guide signs show route designations, destinations, directions, distances,

services, points of interest, and other geographical or cultural information." pp. 13-14.

2C-1. *"Warning signs are used when it is deemed necessary to warn traffic of existing or potentially hazardous conditions on or adjacent to a highway or street.* Warning signs require caution on the part of the motorist and may call for reduction of speed or a maneuver in the interest of his own safety and that of other motorists and pedestrians. Adequate warnings are of great assistance to the vehicle operator and are valuable in safe-guarding and expediting traffic. The use of warning signs should be kept to a minimum however, because the unnecessary use of them to warn of conditions which are apparent tends to breed disrespect for all signs." p. 63. (Emphasis added.)

2C-5. "The Curve sign (W1-2R or 2L) is intended for use where engineering investigations of roadway, geometric, and operating conditions show the recommended speed on the curve to be in the range between 30 and 60 miles per hour and equal to or less than the speed limit established by law or by regulation for that section of highway." p. 66.

2C-7. "The Reverse Curve sign is intended for use to mark two curves in opposite directions, as defined in the warrants for curve signs (sec. 2C-5) that are separated by a tangent of less than 600 feet. If the first curve is to the right, a Right Reverse Curve sign (W1-4R) shall be used, and if the first curve is to the left, a Left Reverse Curve sign (W1-4L) shall be used." p. 67.

The DOT points out that the highway at Beneke's curve does not meet the speed requirements of 2C-5 and as a result signing is not required or necessary. Hence, it is argued that as a matter of law, based upon the directions of the manual, there can be no maintenance defect.

On the other hand, plaintiff points to other sections of the manual which, when considered with the evidence, she contends required the posting of warning signs at the point in question. Plaintiff relies on the language in Section 2A-1 that "[s]igns are essential . . . where hazards are not self-evident" and 2C-1 that "[w]arning signs are used when it is deemed necessary to warn traffic of existing or potentially hazardous conditions on or adjacent to a highway or street."

It is plaintiff's position that the manual contemplates some discretion in DOT as to the location of warning signs and that the physical configuration of the highway as specified in the warrants in the manual, is not the only test to determine the necessity of posting warning signs. Both of plaintiff's experts, Claud McCamment and Mr. Van Wagoner, testified that in their opinions signs were required by the terms of the manual.

K.S.A. 8-2004(*a*) provides:

"The secretary of transportation shall place and maintain such traffic-control devices, conforming to the manual and specifications adopted under K.S.A. 8-2003, upon all state highways as the secretary shall deem necessary to indicate and to carry out the provisions of this act or to regulate, warn or guide traffic."

As we held in *Martin*, liability of the DOT "must be predicated on either (*a*) a failure to comply with a specific legislative mandate or (*b*) the existence of a condition creating actual peril to persons using the highway with due care." The DOT argues repeatedly that if the physical configuration of the highway is such that the warrants for warning signs do not mandate a warning sign then there can be no liability for failure to install one even though a hazardous or perilous condition may in fact exist. We do not construe the statutes and the manual so narrowly. It appears obvious that both vest in the DOT the discretion and obligation to maintain adequate warning signs if, in fact, a hazard does exist. In our opinion the manual merely establishes minimum, not maximum, standards for safety. To hold otherwise would place form over substance and would negate the actual objectives of the statutes and manual of effecting uniform traffic control with a maximum amount of protection for the motoring public. When considered in connection with other evidence, which will hereafter become apparent, we cannot say the trial court was in error in failing to find as a matter of law that a highway defect did not exist within the purview of K.S.A. 1978 Supp. 68-419.

Appellant's second point is that the trial court erred in not granting a motion for a new trial based upon a series of alleged trial errors which the DOT argues had the cumulative effect of denying it a fair trial. The first alleged trial error is that it was error for the trial court to allow the partial deposition of Larue Delp to be admitted in evidence. Mr. Delp was a longtime employee of the DOT and at the time of the accident was head of the department of maintenance. Plaintiff had scheduled Delp for a discovery deposition beginning July 26, 1976. During direct examination by plaintiff's counsel it developed that the witness did not have available certain materials and records necessary for his testimony. The deposition was then continued to be resumed at a later date. Counsel for defendant was specifically asked if she wanted to cross-examine the witness and she decided to withhold cross-examination until plaintiff had completed the direct examination. On January 1, 1977, Mr. Delp retired and moved to the

Philippine Islands. The deposition had not been rescheduled in the meantime and defendant, with full knowledge that the witness would be retiring, took no steps to preserve its right of cross-examination. The DOT contends that the partial deposition of Mr. Delp should not have been admitted in evidence because the DOT did not have the opportunity to cross-examine the witness.

K.S.A. 60-232 allows depositions to be introduced at trial and reads in part as follows:

"60-232. **Use of deposition in court proceedings.** (a) *Use of deposition.* At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:

. . . .

(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds:

. . . .

(B) the witness is at a greater distance than 100 miles from the place of trial or hearing, or is out of the state of Kansas, unless it appears that the absence of the witness was procured by the party offering the deposition . . . ."

The general rule with respect to the admissibility of depositions is stated in 23 Am. Jur. 2d, Depositions and Discovery § 50, p. 393, as follows:

"The deprivation of the right of cross-examination, by lack of notice or otherwise, renders a deposition vulnerable to a motion to suppress it. Ordinarily, the cross-examination is conducted in the same manner as if the deponent were being examined as a witness in court. Since the right of cross-examination may be lost if not availed of at the taking, it is said that the only safe procedure is to cross-examine upon the theory that the testimony taken upon the direct examination may be admitted. The failure of the adverse party to exercise his right of cross-examination does not affect the admissibility of the testimony taken upon the examination in chief."

The trial court in a hearing to determine the admissibility of the Delp deposition found that counsel for the defendant was given an opportunity to cross-examine the deponent at the time of the original taking of the deposition and had an opportunity for several months to reschedule the deposition but did not seek to do so.

The defendant was not deprived of the right to cross-examine by any action of the plaintiff. While it is understandable that

defendant would prefer to reserve cross-examination until completion of the direct examination, when the deposition was not rescheduled by plaintiff the defendant had some obligation to protect its rights if it felt cross-examination was essential. The witness was the employee of the defendant; defendant is charged with knowledge of Delp's impending retirement, and had six months in which to reconvene the deposition. As Delp was unavailable under the provisions of K.S.A. 60-232, the trial court did not err in allowing plaintiff to use the deposition in evidence.

Next appellant contends it was error for the court to allow in evidence Kansas Highway Patrol reports of seven accidents which occurred at Beneke's curve between April 19, 1968, and February 1, 1975. Plaintiff sought to introduce a total of ten reports for the purpose of showing that the DOT had notice of the alleged highway defect and that a defect in fact existed. The court, after a hearing and after examination of each of the ten reports, found that seven of the accidents were sufficiently similar to the one before the court for the reports to be relevant on the issue of notice. In *Hampton v. State Highway Commission,* 209 Kan. 565, 498 P.2d 236 (1972), a highway defect case, this court held:

"Defendant objected to the admission of evidence of other accidents and general traffic conditions in the area. We think such testimony was relevant not only to the existence of the alleged defect but on the issue of notice, as pointed out in III above. In the case of each accident the trial court held a careful inquiry outside the presence of the jury as to its nature. Only when the court was satisfied that the accident occurred under similar circumstances was the evidence presented to the jury. We see no error in its admission." p. 575, IV.

The trial court followed the procedure described in *Hampton* and specifically found that three of the reports were inadmissible due to a lack of sufficient similarity with the accident in question. Seven reports were found to be sufficiently similar to be relevant upon the question of notice of the existence of the alleged defect. The jury was instructed that the reports were to be considered only for the purpose of showing notice. We find no abuse of discretion. *Horn v. Chicago, R. I. & Pac. Rld. Co.,* 187 Kan. 423, 357 P.2d 815 (1960); 29 Am. Jur. 2d, Evidence § 305; 40 Am. Jur. 2d, Highways, Streets and Bridges § 595; 70 A.L.R. 2d 167, 178-198.

Photos taken by the Highway Patrol showed certain beer cans in the automobile in which plaintiff was riding. Some of the cans

appeared to be empty while others appeared to be unopened. Plaintiff filed a motion *in limine* to prevent any testimony about the consumption of beer by plaintiff or others in the car. At the hearing on the motion, it was disclosed that the evidence would show plaintiff had consumed one beer; Chuck Garrett, the fatally injured passenger, had consumed more than one beer and the driver, Michael Schaeffer, had consumed none. Defendant wanted to introduce evidence about the consumption of beer by plaintiff and Garrett, contending it was relevant to the issue of plaintiff's negligence. *Rhoades v. Atchison, T. & S. F. Rly. Co.,* 121 Kan. 324, 246 Pac. 994 (1926); *McIntosh v. Oil Co.,* 89 Kan. 289, 131 Pac. 151 (1913). The trial court held a hearing on the motion *in limine* and specifically found that the evidence should be excluded as the chance of prejudicing the jury outweighed any probative value that might result from the admission of the evidence. The pretrial order reveals that while negligence of the plaintiff was asserted by the DOT to be a contested fact, it was not among the factual or legal issues to be determined at trial. Under K.S.A. 60-445, the trial court is given wide discretion on the admission or exclusion of evidence and no abuse of that discretion is shown.

Next appellant objects to the admission of the deposition of L. W. Newcomer, a witness for the plaintiff. Newcomer was the Secretary of Transportation on the date of the accident and defendant appears to argue that the deposition, which went primarily to the issue of notice, should not have been admitted because there was other evidence which showed notice to the DOT. However, at the time of admission of the deposition the question of the notice required under the statute was being contested by the DOT. Defendant also objects to the admission of a letter written by Newcomer subsequent to the accident contending it could not be used to show notice. The court excised certain portions of the letter and then let it be admitted solely for the purpose of showing the alleged defect and not for the purpose of notice. The jury was so instructed. The evidence was relevant to one of the issues and no error is shown.

Next, it is contended it was error for the court to admit evidence from McCamment, Alfred Beneke and a Mr. Pogenkopf of the fact that warning signs had been posted at Beneke's curve for several years from the 1940's to the 1960's. Defendant again

contends that the warrants in the manual when applied to the physical configuration of the highway did not require a warning sign; while plaintiff contends a·hazardous condition existed and signs were required. Under the theory propounded by the plaintiff, the evidence was relevant to show the DOT and its predecessors had considered warning signs necessary prior to adoption of the manual. All agree that there had been no change in the physical features of the highway since its construction in 1929. In addition, the testimony of Mr. Beneke, among others, about the increase in accidents after the signs were removed bears out the relevancy of the admitted evidence. Mr. McCamment testified the signs had been posted in the past and were necessary. Appellant's point is without merit.

On the fatal night, Delmer Palmer, undersheriff of Marion County, observed the Schaeffer vehicle from a point a few miles north of the accident. Defendant attempted to elicit testimony from Undersheriff Palmer that he thought the Schaeffer vehicle was traveling too fast. Plaintiff objected and the evidence was excluded although plaintiff made it clear she had no objection to Palmer stating his opinion of the speed of the Schaeffer vehicle. Defense counsel declined to inquire as to the witness' opinion of the actual speed of the vehicle and abandoned the line of questioning. Defendant also attempted to introduce evidence of Palmer's "thoughts" through the Highway Patrolman who investigated the accident and discussed it with Palmer. No error is shown in the exclusion of the proposed testimony of both witnesses.

During the trial plaintiff questioned certain DOT employees about their duties and obligations as employees of DOT. Defendant contends error asserting this was not a negligence case and therefore any duty or obligation by employees of DOT was not relevant. The inquiries of the plaintiff were directed toward the issues of whether a defect actually existed and whether defendant had notice thereof. In *Hampton* we said:

"The answer here is that we are not dealing with the commission's exercise of discretion any more than we are dealing with its negligence or lack of it. Its action or non-action is judged by the result - i.e., whether it produced such a hazardous condition that it constituted a 'defect' in the highway. The absence of a warning sign was one factor to be considered in making that judgment, regardless of any mental processes involved in the decision making." *Hampton v. State Highway Commission*, 209 Kan. at 577-8.

The inquiries of the plaintiff were relevant to the issues.

Defendant's next point concerned certain instructions given by the trial court. At argument counsel for defendant advised this court that the point was being abandoned.

Defendant requested that certain special questions be submitted to the jury as a part of its verdict as authorized by K.S.A. 60-249. The decision to submit special interrogatories to the jury rests within the sound discretion of the trial court and will not be disturbed on appeal absent a showing of abuse of discretion. *Plains Transport of Kansas, Inc. v. Baldwin,* 217 Kan. 2, 535 P.2d 865 (1975). No abuse of discretion has been shown in the court's refusal to give the requested special interrogatories.

Once again, defendant raises the question of the admissibility of the testimony of Claud McCamment relative to a design defect in the highway as constructed in 1929. We do not deem it necessary to further prolong this opinion by reviewing the qualifications of Mr. McCamment. Suffice it to say they are extensive and impressive. The trial court has wide discretion in allowing the testimony of expert witnesses and the use of such testimony ordinarily goes to the weight of the evidence and not its admissibility. *Plains Transp. of Kan., Inc. v. King,* 224 Kan. 17, 578 P.2d 1095 (1978).

Finally, defendant contends that the totality of the events as hereinbefore discussed resulted in the denial of a fair trial to the DOT. The record is voluminous and reveals the case was competently tried by counsel for both sides. Twenty witnesses testified for the plaintiff and nine for the defendant. Over fifty exhibits were admitted. Experts testified for both sides. This was essentially a fact case that was hotly contested. The verdict of the jury and the rulings of the court are supported by substantial competent evidence and the record reflects that both parties received a fair, if not a perfect, trial. Defendant complains that the trial judge was "inexperienced"; that the jury was "worn out"; that the trial should have started on Monday instead of Tuesday so more time would be available; that the jury was required to deliberate on Saturday; that trial extended after 5:00 p.m. on two days; that plaintiff's case took 3 more hours than the two and one-half days originally estimated; that plaintiff's counsel "bootlegged" inadmissible evidence before the jury; that plaintiff's counsel tried the DOT and not the facts and numerous other complaints, all of

which are without merit. The parties have had their day in court and no prejudicial error has been shown.

The judgment is affirmed.