**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 2001-CA-01446-SCT**

*CHARLES L. DONALDSON*

*v.*

*COVINGTON COUNTY, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 8/22/2001 |
| TRIAL JUDGE: | HON. ROBERT G. EVANS |
| COURT FROM WHICH APPEALED: | COVINGTON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | ROBIN L. ROBERTS |
| | EUGENE COURSEY TULLOS |
| ATTORNEYS FOR APPELLEE: | ROBERT O. ALLEN |
| | SALLY BURCHFIELD DOTY |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 03/27/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE PITTMAN, C.J., WALLER AND CARLSON, JJ.**

**PITTMAN, CHIEF JUSTICE, FOR THE COURT:**

¶1.     Charles L. Donaldson was involved in car accident while driving on old Highway 49, a county-maintained road, in Covington County.  Donaldson sued Covington County under the Mississippi Tort Claims Act ("MTCA"), Miss. Code Ann. §§ 11-46-1 to -23 (Rev. 2002), alleging that the county knew the road was unreasonably dangerous and failed to warn motorists of the danger.  After a bench trial, the circuit court entered judgment for the county holding that the county exercised ordinary care in performing its duty to warn motorists of the curve.  Donaldson appeals.

**FACTS**

¶2.    On a rainy January 12, 1998, Charles L. Donaldson was involved in a one-vehicle accident on the county-maintained Old Highway 49 ("Highway 49") in Covington County. At the time, Donaldson was hauling a backhoe using his employer's van. The stretch of road where the accident occurred presents a significant curve and a railroad intersection.

¶3.    Donaldson alleged that the county knew of the dangerous road conditions and that the county's failure to warn motorists was the proximate cause of his accident. Likewise, he claimed, by failing to warn motorists of a known hazard, the Board of Supervisors, which is responsible for maintaining county roads, acted with reckless disregard for his safety. Denying all liability, the county maintained that it satisfied all requirements of the law and due care.

¶4.    In July 2001, a two-day trial was held in the Circuit Court of Covington County.

¶5.    Donaldson testified that he was traveling at approximately 40 m.p.h with his windshield wipers and headlights on and, because there was insufficient warnings, the curve surprised him.

¶6.    The accident investigator from the sheriff's department, Joseph Tuggle, testified that there were no warnings along the route Donaldson was traveling and that warnings were posted subsequent to Donaldson's wreck. Additionally, he testified to his knowledge of other, unreported wrecks at this curve.

¶7.    Donaldson presented John Exnicios as an expert witness in the field of traffic engineering and road signs. He testified regarding a "ball bank indicator" test, which is used to determine the proper speed that a curve can be safely negotiated by motorists. After conducting his own test, Exnicios concluded that 25 m.p.h. was the appropriate speed for the curve and that 55 m.p.h – the speed limit at the time of Donaldson's wreck– was too high.

¶8.    Further, Exnicios testified that the county failed to satisfy the guidelines provided in the Manual on Uniform Traffic Control Devices ("MUTCD") and that the county failed to adequately warn motorists of

2

the curve. The MUTCD is published by the Federal Highway Administration (FHWA) and defines the national standards for the installation and maintenance of traffic control devices on all streets and highways. The standards of the MUTCD are classified in three categories: advisory, permissive, and mandatory. *Dep't of Transp. v. Mikell*, 493 S.E.2d 219, 222 (Ga. Ct. App. 1997).

¶9.     Because he was not an accidentologist, the court prevented Exnicios from testifying regarding whether the lack of signs was the proximate cause of the wreck or give his opinion on whether the county failed to adequately warn motorists.

¶10.     Ultimately, the trial court held that the county exercised ordinary care in the performance of its placement of warnings. The decision of the trial court failed to mention the MUTCD, but noted that, though not ideal, the warnings provided by the county were adequate to warn motorists.

## STANDARD OF REVIEW

¶11.     A case brought under the Tort Claims Act is tried without a jury. Miss. Code Ann. § 11-46-13. *See also Simpson v. City of Pickens,* 761 So.2d 855, 860 (Miss. 2000). A circuit court judge sitting without a jury is accorded the same deference with regard to his findings as a chancellor, and his findings will not be reversed on appeal where they are supported by substantial, credible, and reasonable evidence. *Maldonado v. Kelly*, 768 So.2d 906, 908 (Miss. 2000) (citations omitted). This Court reviews questions of law, including the proper application of the Mississippi Tort Claims Act, de novo. *City of Jackson v. Perry,* 764 So.2d 373, 376 (Miss. 2000).

## ANALYSIS

I.     **SHOULD THE MANUAL ON UNIFORM TRAFFIC CONTROL DEVICES ("MUTCD") BE ENFORCED AS THE STANDARD OF CARE?**

¶12.   Donaldson petitions the Court to extend the holding in *Jones v. Panola County*, 725 So.2d 774 (Miss. 1998), and enforce the MUTCD as the minimum standard of care in the placement of signs.  The county maintains that a strict enforcement of the MUTCD is unworkable and ignores the inherent particularities of Mississippi roadways.  The county notes the utility of the MUTCD; however, it argues that ultimately it is the people charged with maintaining roadways who are best suited to determine the necessary signs.

¶13.   Mississippi law requires the Commissioner of Public Safety to adopt a manual for uniform traffic control, which must generally conform with the system approved by the American Association of State Highway Officials ("AASHTO").  Miss. Code Ann. § 63-3-301 (Rev. 1996).[1]  Local authorities may place and maintain traffic control devices as they deem necessary; however, the devices shall conform to the state manual.  *Id.* § 63-3-305.[2]

¶14.   Interpreting § 63-3-305, the Attorney General concluded that local authorities have a duty to determine the necessity of traffic control devices and post signs thereto conforming with state law.  Miss.

---

[1]     The commissioner of public safety shall adopt a manual and specifications for a uniform system of traffic-control devices consistent with the provisions of this chapter for use upon highways within this state. Such uniform system shall correlate with and so far as possible conform to the system then current as approved by the American Association of State Highway Officials.

Miss. Code Ann. § 63-3-301 (Rev. 1996).

[2]     Local authorities in their respective jurisdictions shall place and maintain such traffic control devices upon highways under their jurisdiction as they may deem necessary to indicate and to carry out the provisions of this chapter or provisions of local traffic ordinances or to regulate, warn, or guide traffic. All such traffic-control devices hereafter erected shall conform to the state manual and specifications.  Local authorities in exercising those functions referred to in the preceding paragraph shall be subject to the direction and control of the state highway commission.

Miss. Code Ann. § 63-3-305 (Rev. 1996).

Att'y Gen. Opinion No. 2000-0565 (Sept. 29, 2000). However, to ensure uniformity, all such devices must meet the specifications set forth in the manual. *Id*.

¶15. This Court has considered the relationship between MUTCD and the standard of care and held that the MUTCD was admissible as nonconclusive proof of the standard of care. ***Jones v. Panola County***, 725 So.2d 774 (Miss. 1998). *See also* ***Leflore County v. Givens***, 754 So.2d 1223 (Miss. 2000). In ***Panola County***, the plaintiff sued the county after his vehicle struck a gravel pile that was used to mark an out of service bridge. 725 So.2d at 775. The plaintiff appealed the decision of the trial court prohibiting him from offering the MUTCD as evidence of the applicable standard of care in the placement of warnings. ***Id.*** at 777. Reversing and remanding, this Court held that "the relevant MUTCD provisions may properly be considered by a jury as evidence of negligence, albeit not as conclusive evidence thereof." ***Id.*** at 778 (footnote omitted). This Court stressed that a verdict favoring the plaintiff based solely on the MUTCD guidelines would be improper. ***Id.*** at 778-79.

¶16. In an unrelated case, we held that both counties and the Department of Transportation have a duty to warn motorists of a known dangerous condition. ***Jones v. Miss. Dep't of Transp.***, 744 So.2d 256, 258 (Miss. 1999). The case arose after the county reopened a road but failed to place a stop sign where the road intersected with another forming a "T" intersection. ***Id.*** at 258. In the decision, we recognized that, although Mississippi had not formally adopted a manual, the MUTCD was the manual to be used in conformity with the statutes. ***Id.*** at 262 (citing ***Jones v. Panola County***, 725 So.2d at 777-78).

¶17. The Court finds that there is no majority view regarding the MUTCD. *E.g.*, ***Donaldson v. Dep't of Transp.***, 511 S.E.2d 210 (Ga. Ct. App. 1999)(since the MUTCD was not published by authority by the Secretary of State as state adopted regulations, it does not have the force of law); ***Brockie v. Omo***

*Constr.., Inc.*, 944 P.2d 61(Mont. 1992) (violation of MUTCD is not negligence per se but evidence of negligence); *Fisher v. State*, 702 N.Y.S.2d 418 (N.Y. App. Div. 2000)(MUTCD sets forth the standards for evaluating the reasonableness of the State's placement of road markings); *Patton v. Cleveland*, 641 N.E. 2d 1126 (Ohio Ct. App. 1994) (failure to meet requirements of MUTCD to post construction approach signs was negligence per se, not some evidence of negligence); *City of Mission v. Cantu*, 89 S.W.3d 795 (Tex. App. 2002) (violations of the MUTCD are not negligence per se, as compliance with the MUTCD is not mandatory).

¶18.    Donaldson cites *Schaeffer v. Kansas Dep't of Transp.*, 608 P.2d 1309 (Kan. 1980).  In *Schaeffer*, a woman sued the Kansas Department of Transportation ("KDOT") alleging that, because there was an inadequate warning regarding the curve, there was a street defect, which led to her husband's inability to safely negotiate a curve.  *Id.* at 1312.  Quoting the opinion from the Kansas Supreme Court, which affirmed a decision holding the DOT 49% responsible to Schaeffer 51%, Donaldson argues:

> [It] appears obvious that both [statute and MUTCD] vest in the DOT the discretion and obligation to maintain adequate warning signs if, in fact, a hazard does exist. *In our opinion the manual merely establishes minimum, not maximum, standards for safety*. To hold otherwise would place form over substance and would negate the actual objectives of the statutes and manual of effecting uniform traffic control with a maximum amount of protection
> for the motoring public.

*Id.* at 1316 (emphasis added).  Upon review, we find *Schaeffer* unpersuasive.

¶19.    *Schaeffer* was based on a since repealed statute that allowed a party to sue state entities based on a *highway defect,* in contrast to a suit based on common law negligence.  *Schmeck v. City of Shawnee*, 651 P.2d 585 (Kan. 1982).  Because the standard of liability differs between an action based on statutory liability for a highway defect and one based on common law negligence, the law pertaining

6

statutory highway defects does not apply to an action based upon common law negligence theory. *Schmeck*, 651 P.2d at 594-95. Therefore, Donaldson's reliance on *Schaeffer* is misplaced.

¶20. Likewise, the MUTCD lends no support to Donaldson's argument. The manual states that it "describes the application of control devices, but shall not be the legal requirement for the installation." Manual of Uniform Traffic Control Devices § 1A.09 (Millennium Ed. with Revision No. 1 changes Dec. 28, 2001). The "decision to use a particular device at a particular location should be made on the basis of either an engineering study or the application of engineering judgement." *Id*. The manual should not be considered a substitute for engineering judgment. *Id*.

¶21. The Court declines to extend the holding in *Jones v. Panola County* or to more strictly enforce the provisions of the MUTCD. Previously, this Court has considered this issue and is not compelled to expand its prior holdings. Our decision is based on Donaldson's failure to cite other jurisdictions that employ the approach he urges the Court to adopt and the aforementioned provisions of the MUTCD.

¶22. To rule as Donaldson urges would substitute the MUTCD for engineering judgment. This Court declines to hold that the MUTCD is only factor in determining whether the county exercised ordinary care. Thus, this issue is without merit.

## II. DID THE TRIAL COURT ERRONEOUSLY LIMIT THE TESTIMONY OF THE PLAINTIFF'S EXPERT?

¶23. Donaldson argues that the trial judge improperly limited the testimony of his expert, John Exnicios. In addition to other testimony, Exnicios, a traffic engineer, was prepared to testify regarding the issues of adequate warning and causation. However, the trial judge determined that testimony regarding warning and causation required a witness trained in accident reconstruction and, therefore, limited the testimony by Exnicios. Donaldson alleges that this was a reversible error.

7

¶24. Questioned whether a lack of road markings would make the curve hazardous, Exnicios testified affirmatively and stated that the lack of markings would be one of the proximate causes of the accident. Objecting, the county argued that Exnicios was not qualified to answer the question. The trial court agreed and ruled that this line of questioning required an accidentologist. The ensuing dialogue occurred, with Roberts for Donaldson and Allen for the county:

ROBERTS: Assume... for a moment that Mr. Donaldson was traveling between 45 and 50 miles per hour north on Highway 49, that the weather conditions were or had been wet and he was driving a passenger van pulling a trailer with a backhoe and that as he drove north on the highway there were no signs marking this particular curve. Is it your opinion that there would have been a failure to adequately warn the driver on the part of the county in this situation?

EXNICIOS: In my opinion, this curve required a signage. It was not an apparent curve to a motorist that wasn't aware of the curve. So, my opinion is that the signs should have been there, and they should be required because of the differences in speed [between] the legal limit on the approached road and then the tight curve which required a reduction in speed of some 30 miles an hour. So, I believe the signs were necessary.

ROBERTS: And would that constitute a lack of warning was the other part of my question?

ALLEN: Your Honor, I'm going to object to that. That calls again for [a] conclusion as an accidentologist. In his expertise, he's given his opinion as to whether the signs should be there..., and I think he's trying to take it too far.

ROBERTS: Your Honor, if I may, he's addressing warning here and that is his...

COURT: Well, I think he can testify as to whether or not the absence of signs complies with the MUTCD standards.

ROBERTS: MUTCD.

COURT: Yeah.

EXNICIOS: Is that the question? Excuse me.

8

ROBERTS:     Well, let me make sure I understand the court's ruling. Your Honor, are you saying that it would be improper for him to testify about the failure on the part of the county make a warning in his opinion?

COURT:       Yeah, because that's a legal question. Ordinary care is a legal question.

ROBERTS:     Okay.

COURT:       Of course, the facts determine whether or not the legal issue is met too... I don't think it's proper to ask him is the failure to have signs a lack of ordinary care. I think that's a legal question.

He can testify as to what the signs would accomplish as to how they would affect drivers and what the absence of signs would accomplish with regard to the effect on drivers, et cetera.

¶25.    M.R.E. 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Accordingly, Exnicios should have been allowed to testify whether the curve required signs, whether the warnings complied with the MUTCD, and whether the county failed to provide adequate warnings.

¶26.    M.R.E. 704 provides:

Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

Generally, Rule 704 requires that opinions, before being admissible, satisfy the Rule 701 and 702, in that "they must be helpful to a determination of the case." M.R.E. 704 cmt.

¶27.    The trial judge incorrectly stated that ordinary care is a legal question. The standard of care is a question of fact reserved for the trier of fact. *See* ***Stewart ex. rel Womack v. City of Jackson***, 804 So.2d 1041, 1049 (Miss. 2002) (the issue of ordinary care is a fact question; the question of whether ordinary care was, in fact, exercised is for the trial court, sitting without a jury, to decide). Despite the error,

9

the trial judge did include his analysis of ordinary care in the Findings of Fact. This Court concludes that, ultimately, the trial judge properly considered ordinary care as a factual issue.

¶28. Despite these objections, Exnicios was allowed to testify to extensively. The record reflects that the trial judge was fully advised as to the opinions of Exnicios. It is unlikely that the excluded testimony would have been a major factor on the decision of the trial court. The exclusion of such testimony does not constitute a reversible error nor would it have changed the findings of the trial court. Therefore, the trial judge did not abuse his discretion.

### III. WERE THE FINDINGS OF THE TRIAL COURT BASED ON SUFFICIENT EVIDENCE?

¶29. Next, Donaldson appeals alleging that there was insufficient evidence to support the trial court's findings. He claims that the findings were based on an improper application of the MUTCD and a failure to properly consider the credibility and persuasiveness of his witnesses. Because it failed to specifically refer to the MUTCD in its findings, he argues that the trial court failed to apply the proper standard of care and must be reversed.

¶30. For support, Donaldson emphasizes the testimony from several witnesses. First, the testimony from county supervisor Mason Trigg who admitted the placement of signs was generally determined by personal observation rather than according to the MUTCD. Second, Donaldson focuses on the testimony from the accident investigator and a resident who resides near the curve. Both of these witnesses testified that numerous wrecks had occurred on that same stretch of road and that it was generally known to be dangerous.

¶31. Again, Donaldson emphasizes the testimony of Exnicios and the fact that he was the the only expert to testify regarding the applicable standard of care. Exnicios's opinion was that even if the court adopted

the position of the county, the warnings provided motorists were inadequate.[3]  In his opinion, the inadequacy resided in the fact that the warnings failed to account for the severity of the turn.  Despite Exnicios's testimony, there was sufficient evidence to support the findings of the trial court.

¶32.    The county presented several witness regarding the warnings posted at the time of the accident. Both a current and former county supervisor and several county road workers testified regarding signs present the day of the wreck.  This was in addition to the testimony from the State Aid Engineer regarding installation of other warnings that he supervised.[4]    Thus, Donaldson's argument shifts to one of credibility rather than the sufficiency of the evidence.

¶33.    Alternatively, the county argues that regardless of whether it breached its duty of ordinary care, there was substantial evidence that the breach was not the proximate cause of the accident.  This includes: evidence regarding Donaldson's failure to take adequate caution under the road conditions, especially considering the load he was hauling; testimony from several witnesses who stated that just prior to the wreck, they noticed that he was in a hurry and specifically warned him to be cautious; and testimony from Chester King, who found Donaldson after the wreck, that only moments before Donaldson had passed him from behind at a high rate of speed.

¶34.    When a trial judge sits without a jury, an appellate court must review the record and accept all evidence that would reasonably support the judgment, together with any reasonable inferences that could be drawn from the evidence. *Yarbrough v. Camphor*, 645 So.2d 867, 869 (Miss. 1994).  This Court must let stand trial judge's findings of evidentiary or ultimate fact when substantial evidence in the record

---

[3] According to the county, at the time of the accident there was a "standard curve sign" (without warning motorists to reduce speed), a "slippery when wet sign," and a railroad crossing sign.

[4]The Mississippi Department of Transportation provides State Aid engineers for counties that are without a county engineer.

supports those findings, or when findings are not clearly erroneous. *Crowe v. Smith*, 603 So.2d 301, 304 (Miss. 1992).

¶35. This Court determines that the findings of the trial court were based on sufficient evidence. Both parties presented conflicting evidence regarding the presence of warnings and had several witness testify in support of their arguments. Because it observes the witnesses first hand, the trial court is in the best position to assess the persuasiveness of a witness and to decide what weight to afford that witness's testimony. *Amiker v. Drugs For Less, Inc*., 796 So.2d 942, 947 (Miss. 2000).

¶36. Donaldson requests that this Court reverse the trial court based on its failure to expressly refer to the MUTCD in its findings and based on the testimony of Exnicios. Failure to refer to the MUTCD does not rise to the level of a reversible error, and because there was considerable evidence and testimony rebutting Donaldson's claims, this Court is unable to find that the decision of the trial court was clearly erroneous.

## IV. DOES THE MTCA VIOLATE PLAINTIFF'S RIGHT TO A JURY TRIAL?

¶37. Mississippi Tort Claims Act cases are tried without a jury. Miss. Code Ann. § 11-46-13(1). Donaldson alleges that the MTCA denies his right to a jury trial provided by the state constitution, which provides in part: "[that] the right to trial by jury shall remain inviolate." Miss. Const. art. 3, § 31.

¶38. Because Donaldson failed to raise this issue with the trial court or to give notice to the Attorney General, this issue is procedurally barred. When the constitutionality of a statute is challenged notice must be given to the Attorney General. Miss. R. Civ. P. 24(d); M.R.A.P. 44(a). *See also Barnes v. Singing River Hosp. Sys.*, 733 So.2d 199, 202-03 (Miss. 1999). Further, except in unusual circumstances, this Court should not consider any matter which has not first been presented to and decided

12

by the trial court. *Id.* at 202. "The law is well settled that the constitutionality of a statute will not be considered unless the point is specifically pled." *Id.* The failure to raise the issue at trial and to notify the Attorney General renders the issue procedurally barred.

## CONCLUSION

¶39. For these reasons, the judgment of the Covington County Circuit Court is affirmed.

¶40. **AFFIRMED.**

**SMITH, P.J., WALLER, COBB, CARLSON AND GRAVES, JJ., CONCUR. DIAZ, J., CONCURS IN RESULT ONLY. McRAE, P.J., AND EASLEY, J., DISSENT WITHOUT SEPARATE WRITTEN OPINION.**