The Honorable Arlen Siegfreid State Representative, 15th District 1403 W. Prairie Terrace Olathe, Kansas 66061
James W. Morrison, City Attorney City of St. Marys P.O. Box 130 St. Marys, Kansas 66536
Dear Representative Siegfreid and Mr. Morrison:
You inquire regarding a city's ability to charter out of the destination sourcing requirement[1] in the Local Retailers' Sales Tax Act.[2] If cities can do so, you inquire whether a city can require the Kansas Department of Revenue (KDOR) to administer and collect a local retailers' sales tax that does not conform to such requirement.
The Local Retailers' Sales Tax Act authorizes cities and counties to impose local retail sales taxes on certain items of tangible personal property. The statutory scheme establishes rate limitations and procedures to impose such a tax, including election requirements. The destination sourcing requirement which is the subject of your request states, in part:
 "All retail transactions consummated within a county or city having a retail sales tax, which transactions are subject to the Kansas retailers' sales tax, shall also be subject to such county or city retail sales tax. [A]ll retail sales . . . shall be considered to have been consummated at the location determined by the sourcing rules as provided in K.S.A. 2004 Supp. 79-3670. . . ."[3]
The "sourcing rules," contained in the Streamlined Sales and Use Tax Agreement Conformity Act,[4] generally require both the local and state sales tax rate to be calculated or "sourced" in the taxing jurisdiction where the item is received rather than where the sale originates. For example, if a person purchases and receives an item at a retail location in the City of St. Mary's, the local sales tax is the rate imposed by the City. However, if a person purchases an item from a retail business located in the City of St. Mary's but the item is delivered to the person's residence in the City of Topeka, the local sales tax rate is calculated by the St. Mary's retailer at the rate imposed by the City of Topeka.
Regarding out-of-state purchases, if a person purchases an item from a business located in another state that participates with the State of Kansas in the streamlined sales tax agreement[5] and the item is delivered to the person's residence in the City of St. Mary's, the state tax rate is the rate imposed by the State of Kansas and the local sales tax rate is the rate imposed by the City of St. Mary's.
Insofar as administration and collection of the local sales tax is concerned, the Local Retailers' Sales Tax Act requires KDOR to do so in accordance with the Kansas Retailers' Sales Tax Act:[6]
 "Any county or city levying a retailers' sales tax is hereby prohibited from administering or collecting such tax locally, but shall utilize the services of the state department of revenue to administer, enforce and collect such tax. [S]uch tax shall be identical in its application . . . to the Kansas retailers' sales tax act and all laws and administrative rules and regulations of the state department of revenue relating to the Kansas retailers' sales tax act shall apply to such local sales tax insofar as such laws and regulations may be made applicable. The state director of taxation is hereby authorized to administer, enforce and collect such local sales taxes and to adopt such rules and regulations as may be necessary for the efficient and effective administration and enforcement thereof."[7]
With this background in mind, we consider whether a city may charter out of the destination sourcing requirement, K.S.A. 2004 Supp. 12-191, which is part of the Local Retailers' Sales Tax Act.[8] Whether a city may do so depends upon whether the Local Retailers' Sales Tax Act applies uniformly to all cities. If the Local Retailers' Sales Tax Act does not apply uniformly to all cities, a city may charter out of any of its provisions, including the destination sourcing provision.[9]
In Home Builders Assn. of Greater Kansas City v. City of Overland Park,Kansas,[10] the Kansas Court of Appeals considered whether cities could charter out of a provision in the Local Retailers' Sales Tax Act, specifically, K.S.A. 12-194, which prohibits cities from imposing excise taxes on certain sales of personal or real property. The Court noted that the provision, on its face, applies uniformly to all cities. However, the Court continued its analysis of the uniformity question by reviewing the entire enactment to determine whether there was any statute within the enactment that did not apply uniformly to all cities.
The Court found such a provision at K.S.A. 12-187(a)(2) which, at the time, provided, in part:
 "The governing body of any city located in any county which does not impose a countywide retailers' sales tax . . . may submit the question of imposing a retailers' sales tax at the rate of .25%, .5%, .75% or 1% and pledging the revenue therefrom for the purpose of financing the provision of health care services . . . to the electors. . . . [T]he tax imposed pursuant to this paragraph shall be deemed to be in addition to the rate limitations prescribed in K.S.A. 12-189. . . ." (Emphasis added.)
The Court concluded that treating cities differently within the four classes prescribed in K.S.A. 12-188 created a nonuniformity sufficient to allow a city to charter out of the excise tax prohibition of K.S.A. 12-194:
 "[K].S.A. . . . 12-187(a)(2) has the effect of treating cities within the four classes. . . nonuniformly depending upon whether the county in which a particular city sits has enacted the retailers' sales tax. . . . [T]ake, for instance, a class B city. . . . [A]ccording to K.S.A. . . . 12-189, `the rate of any class B city retailers' sale tax shall be fixed in the amount of .25%, .5%, .75%, 1.25%, 1.5%, 1.75% or 2%.' However, class B cities sitting in a county which has not enacted a countywide retailers' sales tax . . . may submit the question of an additional retailers' sales tax to their electors. [T]hus, it appears the legislature . . . is treating cities of the same class within the local retailers' sales tax enactment nonuniformly. By treating cities within the same class nonuniformly, the legislature has opened up the local retailers' sales tax enactment to home rule authority."[11]
K.S.A. 2004 Supp. 12-187(a)(2) has since been amended to allow only class B cities located in counties not imposing a retailers' sales tax to impose an additional sales tax.[12] However, because the Legislature is treating class B cities differently depending upon whether they are located within a county that imposes a countywide retailers' sales tax, it is our opinion that the nonuniformity still exists and, therefore, a city may charter out of any of the provisions of the Local Retailers' Sales Tax Act, including the destination sourcing requirement in K.S.A. 2004 Supp. 12-191.[13]
This determination, however, does not mean that a city can require KDOR to administer and enforce a local retailers' sales tax in a manner that does not conform to state law dictating KDOR's role in administering the collection of the tax. Attorney General Robert T. Stephan addressed a similar issue in 1982 and concluded that while a city can charter out of nonuniform state laws, it cannot impose responsibilities on a state agency.
In Attorney General Opinion No. 82-17, Attorney General Stephan considered whether a city could charter out of the transient guest tax enactment.[14] The transient guest tax is similar to the local retailers' sales tax in that both enactments authorize cities to impose taxes on services or property. The taxes are paid by the consumer to the business entity which then submits the tax to KDOR. In both cases, KDOR is responsible for administering and enforcing tax collection.[15]
One of the questions posed to General Stephan was whether a city could charter out of the statutes requiring KDOR to administer and collect the tax[16] and, instead, impose different responsibilities on KDOR. General Stephan concluded that, as the transient guest tax enactment was nonuniform,[17] a city could charter out of any of its provisions. However, he advised that the provision of the charter ordinance imposing responsibilities on KDOR was unenforceable:
 "However, we note that section 7 of the ordinance attempts to impose the responsibility for collection of the city tax upon the State Department of Revenue. Having exempted itself from the statute which authorizes a state agency to collect the transient guest tax, the city is not free to impose similar burdens on [the State Department of Revenue]. Simply stated, state agencies are creatures of the state legislature, and cities, even in the exercise of their extensive home rule powers, lack authority to impose administrative duties on state agencies, as such is not a matter of local concern within the meaning of Article 12, Section 5 [of the Kansas Constitution]."[18]
K.S.A. 2004 Supp.12-189(j) requires KDOR to "administer, enforce and collect such local sales taxes" in accordance with state law.[19] State law provides that, with certain exceptions, a local retailers' sales tax "shall be identical in its application . . . to the Kansas retailers' sales tax act and all laws . . . relating to the Kansas retailers' sales tax shall apply to such local sales tax." [20] Thus, KDOR is obligated to administer and collect local retailers' sales taxes according to state law, which requires compliance with the destination sourcing requirements in K.S.A. 2004 Supp. 79-3670. Therefore, while a city can charter out of the destination sourcing requirement in K.S.A. 2004 Supp. 12-191, KDOR must administer, enforce and collect a local retailers' sales tax in conformity with state law dictating the Department's role in such matters.
Aside from the legal issues that are the subject of this opinion, KDOR has expressed concern that an attempt by a city to charter out of destination sourcing could adversely impact retailers located in such city and could lead to disputes with other local taxing jurisdictions:
 "For example, a retailer located in a city that has `chartered out' of destination sourcing would presumably owe tax to that city based on the origin point of its sale. However, goods sold and delivered by that retailer to a customer in another city that has not `chartered out' would be taxable at the rate in effect at the point of destination. Thus, retailers could be put in a position of having to collect two city taxes on the same sale, or, alternatively, cities would be at odds over which tax takes precedence over the other."[21]
Moreover, as the State is a party to the Streamlined Sales and Use Tax Agreement, an agreement among approximately forty states[22] that requires destination sourcing, an attempt by a city to charter out of the sourcing requirements, according to KDOR, "would put Kansas at risk of being out of compliance with the Agreement and having its application to become a Member State of the Agreement denied."[23]
Summarizing our opinion, Article 12, Section 5 of the Kansas Constitution bestows upon cities "home rule" authority, which encompasses determining a city's "local affairs and government including the levying of taxes. . . ."[24] However, "local affairs" does not extend to requiring the Kansas Department of Revenue to ignore state laws dictating its role in enforcing and administering the collection of the local retailers' sale tax. Therefore, while a city may charter out of the Local Retailers' Sales Tax Act, including the destination sourcing requirement, K.S.A. 2004 Supp. 12-191, the Kansas Department of Revenue must administer, enforce and collect the local retailers' sales tax in conformity with state law dictating the Department's role in such matters.
Sincerely,
 PHILL KLINE Attorney General
 Mary Feighny Assistant Attorney General
PK:JLM:MF:jm
[1] K.S.A. 2004 Supp. 12-191.
[2] K.S.A. 2004 Supp. 12-187 et seq.
[3] K.S.A. 2004 Supp. 12-191 (emphasis added).
[4] K.S.A. 2004 Supp. 79-3666 et seq.
[5] K.S.A. 2004 Supp. 79-3665.
[6] K.S.A. 2004 Supp. 12-189(j); K.S.A. 79-3601 et seq.
[7] K.S.A. 2004 Supp. 12-189(j) (emphasis added).
[8] See Home Builders Assn. of Greater Kansas City v. City of OverlandPark, Kansas, 22 Kan.App.2d 649 (1996) (a provision contained within the Local Retailers' Sales Tax Act is considered a part of the Act if it "concerns the same subject matter as the rest of the local retailers' sales tax enactment").
[9] State of Kansas ex rel. Kline v. Unified Board of Comm'rs of theUnified Government, 227 Kan. 516 (2004); City of Junction City v.Griffin, 227 Kan. 332 (1980).
[10] 22 Kan.App.2d 649 (1996).
[11] 22 Kan.App. at 667-668. (Emphasis added.)
[12] "The governing body of any class B city located in any county which does not impose a countywide retailers' sales tax . . . may submit the question of imposing a retailers' sales tax at the rate of .25%, .5%, l75% or 1% . . . for the purpose of financing the provision of health care services . . . to the electors. . . . [T]he tax imposed pursuant to this paragraph shall be deemed to be in addition to the rate limitations prescribed in K.S.A. 12-189. . . . "
[13] L. 1998, Ch. 188, § 1(a)(2). In the 2005 legislative session, two bills, S.B. 302 and H.B. 2023 amended subsection(a)(2) of K.S.A. 2004 Supp. 12-187 to delete the verbiage creating nonuniformity (i.e."located in any county which does not impose a countywide retailers' sales tax"), but neither bill was successful. Both bills will carryover to the 2006 legislative session.
[14] K.S.A. 12-1696 et seq.
[15] K.S.A. 12-1697(c); K.S.A. 2004 Supp. 12-189(j).
[16] K.S.A. 12-1697; 12-1698.
[17] K.S.A. 12-1699 ("[N]o city located within a county where a transient guest tax is being levied and collected . . . shall levy such a tax.")
[18] "Cities are hereby empowered to determine their local affairs and government. . . ." Kan. Const. Art. 12, § 5(b) (emphasis added).
[19] K.S.A. 2004 Supp. 12-189(j).
[20] Id.
[21] Letter from KDOR General Counsel, James Bartle, April 26, 2005.
[22] K.S.A. 2004 Supp. 79-3665.
[23] Supra, note 21.
[24] Kan. Const., Art. 12, Section 5(b). (Emphasis added.)